ELLIS, Judge.
The appellants have appealed from a judgment awarding appellee compensation for total and permanent disability at the rate of $35 per week, for the duration of his disability not exceeding 400 weeks, as a result of an accident in which he suffered an injury to his left hand while employed as a common laborer.
The question at issue in the lower court as well as on appeal is the extent of ap-pellee’s disability. Appellee contends and the lower court so held that his disability was permanent, whereas appellants argue that the lower court was in error in so holding and contend on this appeal that the appellee is only entitled to an award of seven per cent of 65% of his weekly wage for a period of 150 weeks as provided in subdivision 4, paragraph (e) of Louisiana Revised Statutes, Title 23, Section 1221 which states that “For the loss of a hand sixty-five per centum of the wages during one hundred fifty weeks.” Appellants contend that plaintiff’s hand is only seven per cent disabled. In the alternative appellants contend that as the weight of the medical testimony is to the effect that the plaintiff can return to work and is also to the effect that the plaintiff has at most a 10% disability of the left hand, that he is only entitled to an award of 10% of 65% of his wage at the time he was injured for a period not to exceed three hundred weeks under subdivision 3 of Section 1221 of Title 23 of the Revised Statutes of 1950.
Admittedly the appellee sustained an accident on October 15, 1957, while engaged in the course and scope of his employment while loading heavy pine timbers on a truck, and his left hand was caught between one of these heavy timbers and the body of the truck which was caused by a fellow worker dropping the end of the heavy timber. His left hand was crushed between the timber and the body of the truck. He suffered a deep transverse laceration across the palmar surface of the hand which was treated by Dr. Percy Le-Blanc of Donaldsonville, La. immediately following the accident. The wound was sutured and the hand dressed. Appellee contended that because of the loss of feeling in the index finger, inability to flex same, it being stiff, the weakness of the hand and the almost constant pain, that he was unable to work and therefore totally and permanently disabled.
The District Court so found after a detailed summation in its written reasons of most of the medical testimony which we find to be correct and therefore take the liberty of quoting herein:
“Immediately following his accident, the plaintiff reported to Dr. Percy LeBlanc, in Donaldsonville, Louisiana, where a deep transverse laceration across the palmer surface of his left hand was dressed and sutured. The plaintiff received treatment from Dr. Michael Boustany and from Dr. Bennett Young. He was examined by numerous doctors whose findings and conclusions are found in the record of this case.
“Dr. Bennett Young, an orthopedist who treated the plaintiff, testified, by way of *880 interrogatories. Dr. Young stated that his initial examination revealed sensory loss of the forefinger, limitation of motion on the order of 10% in the metacarpal phalangeal joint, 50% in the proximal in-terphalangeal joint, and 10% loss of flexion in the distal interphalangeal joint. (Deposition, page 3) Dr. Young felt that the sensory disturbances will be a permanent condition. Dr. Young stated that he considered amputating the left index finger, due to the fact that he felt that insufficient function would be restored to this finger to permit normal use thereof. He states further on page 7 that ‘A certain percentage of the disability of the loss of flexion in the joints could be a permanent affair.’ He also states on Page 8 that although the evaluation of pain present and experienced by the plaintiff is difficult, that, nevertheless, he felt that Viator’s complaints of pain had a legitimate basis. Dr. Young felt that the stiffness which he found in Viator’s finger was due primarily to capsular or ligamentour pathology around the joints, in addition to contracture of the collateral ligaments. In response to cross Interrogatory No. 5, Dr. Young states that he disagrees with the implication contained therein since he states very definitely that other factors are involved in Viator’s hand than such tendon damage. In discussing the pain element in this case Dr. Young, in his answer to Cross Interrogatory No. 14, states:
“ ‘I do not feel that this patient was malingering. It is possible that his complaint of pain could have been exaggerated, but this is a difficult thing to determine. I feel that he had definite objective and subjective findings which in general substantiate his complaints of stiffness and some pain.’
“Dr. Young also felt that the tendon muscles were considerably weaker in the left hand as compared to the tendon muscles in the other hand. Dr. Young felt that the disabling condition in the plaintiff’s hand was due primarily to contracture and scarring of the capsule of the joint and collateral ligaments primarily.
“Eddy Viator was examined by Dr. William Zink, a surgeon practicing in Lafayette, Louisiana, specializing in injuries. Dr. Zink’s findings were atrophy of the thumb muscles, decreased sensation to pin prick of the palm and dorsum of the left hand and a scaly or shiny appearance of the skin of the left index finger and thumb; that the plaintiff had sustained a laceration of his left hand, involving nerve injury to the nerve that supplies the muscles of the thumb. In addition, Dr. Zink found tendon injury to the tendons flexing the index finger; that the shiny appearance of the skin in the involved part was definite objective evidence of nerve injury, leading him to conclude, in view of the pain factor, that Viator was suffering from nerve causalgia from which he was totally disabled. In commenting upon the degree of pain involved in Viator’s injury, Dr. Zink states on page 5 of his deposition as follows:
‘“A. I felt like that with the objective findings of nerve injury which I considered the shiny skin to be more than the subjective finding of numbness to pin prick, that I had no reason to not believe that he was having pain.’
“It was Dr. Zink’s opinion, and he so states on page 12 of his deposition, that the pain involved in Viator’s hand was persistent and severe. In addition, Dr. Zink found that the plaintiff had a weakened grip in his left hand. It was Dr. Zink’s opinion that the plaintiff was disabled from the performance of his regular occupation. ‘ * * * I felt that for two reasons that he was not ready to work. First was the stiffened finger. I felt it to be a hinderance. And second, the weakness of his hand would be insufficient for work and my recommendation at the time of the examination was directed toward a treatment.’
“The plaintiff was also examined by Di. Robert Kapsinow, another surgeon practic *881 ing in Lafayette. Dr. Kapsinow found permanent stiffness at the medial and terminal joints of the injured finger, 50% limitation in flexion, and apparent atrophy of the left forearm. Dr. Kapsinow also found: ‘The trip of the hand is distinctly limited because of the weakness in the flexibility of the left index finger and thumb.’ Dr. Kapsinow also found numbness, leading him to conclude that in addition to permanent tendon and ligamentous injury, that Viator had also sustained nerve injury in his left hand. Like Dr. Zink, Dr. Kapsinow also found the atrophy present in the thenar or thumb area.
“ ‘A. * * * I think that the long flexor of the index finger, the flexor digitorum superficialis which is attached to the last crease of the index finger has either been badly lacerated although not completely so or badly crushed to the extent that it has lost most of its function.
“ ‘Q. And the location of the scar leads you to believe that it is very probable?
“‘A. Yes.
“ ‘Q. Now, Doctor, you felt that in addition to that he had some evidence of nerve injury, did you not?
‘“A. Yes, I did.’
“Also like Dr. Zink, Dr. Kapsinow found Viator to be suffering from causalgia and that the permanent injuries to his left hand were of sufficient severity to prevent him from returning to heavy laborious activities.
“ ‘A. I don’t believe that this man can do heavy labor, certainly not the kind that I was given to understand that he did at the time of his accident.
“ ‘Q. Doctor, you felt that his complaint of pain was justified?
“ ‘A. Definitely. Not only subjectively but objectively.’
“In commenting upon the damage to the tendons, Dr. Kapsinow states on page 14 of his deposition:
“ ‘A. I couldn’t prove it, I can’t prove it. I know that one or the other, I know by experience that one or the other, complete crushing or complete severance, would so disable the tendon that to all intents and purposes it is completely useless from the point of view of flexing the finger.’
“The plaintiff was examined by Dr. William Louis Meuleman, an orthopedic surgeon practicing in the city of Lafayette, Louisiana, at the request of the defendant, Employers Mutual of Wausau. Dr. Meule-man’s findings are contained in his medical report introduced in evidence by the defendant and appears in the record in its entirety. Dr. Meuleman found diminished sensation from the middle finger joint to the tip of the finger, limitation of motion in all ■ directions due to pain, particularly inability to flex the finger. On page 1 of his report, Dr. Meuleman states: ‘The index finger is kept almost completely stiff and at no time during the examination was the patient seen to voluntarily use the digit.’ Dr. Meuleman was unable to manipulate the finger because of the pain element involved. In addition, x-rays revealed a chip fractur of the ulna styloid, which Dr. Meuleman interpreted as a result of the injury. Dr. Meuleman suggested anesthesia to eliminate the pain factor and then perform tests to establish the presence of collaterial ligament contractures secondary to trauma. Dr. Meuleman, therefore, suspected the presence of this condition in Viator’s hand. The presence of this condition is further substantiated by the presence of rather severe pain experienced by the patient whenever his finger was manipulated by Dr. Meuleman.
“On page 9 of his deposition, Dr. Bennett Young found: ‘He probably had some con-tracture of the collateria ligaments as well as capsular .ligaments.’
*882 “Viator was seen by Dr. Lastie Broussard on two separate occasions. Dr. Broussard found severe limitation of motion of the patients index finger, diminished sensation, and inability to flex his finger. Dr. Brous-sard felt that Viator probably suffered a combination of both tendon injury and nerve injury. Dr. Broussard also stated that at no time did Viator ever flex his finger in his presence. Dr. Broussard, in view of the location of the scar across the palmar surface of the hand, felt that one of the branches of the median nerve had been severed. Dr. Broussard also had occasion to examine and test the grip in Viator’s hand, which he found to have been considerably weakened. It was Dr. Brous-sard’s opinion that the plaintiff was totally and permanently disabled from the performance of heavy labor.
“ ‘Doctor, in view of the occupation described to you by the patient, namely, heavy laborious activity, did you feel that at the time of both of your examinations that this patient was unable to return to heavy laborious work which is required in the oil fields?
“ ‘A. I don’t think he can return to heavy work.
“ ‘Q. Do you feel that the condition demonstrated to you is a permanent one?
“ ‘A. I feel it will be permanent.’
“The plaintiff was examined by Dr. Irvin Cahen at the request of the defendants, and Dr. Cahen’s deposition, taken on behalf of the defendants, is filed in the record of this case. Dr. Cahen found a scar paralleling the crease in the palm of the patient’s hand, representing the healed site of the laceration. Dr. Cahen found flexion weakness in the finger, apparent atrophy of the soft tissue, which appeared to him to be a loss of the usual subcutaneous, fatty tissues. Dr. Cahen also reported complaints of pain from the patient upon attempting to flex the injured finger. Dr. Cahen also found sensory disturbances or numbness over the ulnar aspect of the index finger. It was Dr. Cahen’s opinion that the condition demonstrated to him in the hand occurred as a result of injury to the blood and nerve supply to the index finger, in addition to tendon injury in the same finger. ‘Functionally (sic) I concluded that the patient did have some effect of the atrophy of the tissues to the index finger, such as commonly found after the loss of part of the blood supply.’ Dr. Cahen concluded that the sensory disturbances in the hand were due to a severance of one of the branches of the median nerve by the laceration. Dr. Cahen concluded that in view of the physical impairment in Viator’s hand, that he had sustained an 8% permanent disability of the hand as a whole.
“To a certain extent, there is a conflict in the medical evidence introduced. Particularly is this true with reference to the medical opinions contained in the record pertaining to the ability of the plaintiff to return to work. No doctor who examined the plaintiff, however, concluded that he had a perfectly normal hand.”
The lower court in its written reasons also testified the testimony of the lay witnesses to the effect that appellee was disabled and that on occasions they observed the plaintiff’s inability to hold and grasp objects and had personally seen him drop several cups “inadvertently.”
In addition to the testimony discussed by the lower court in its written reasons for judgment we have that of Dean U. Harrell, M.A., R.P.T., who operated a clinic for physical therapy and treated the plaintiff from December 23, 19S7 to Feb. 8, 1958 after he was referred by Dr. M. E. Bou-stany. This witness in a report introduced in evidence stated that he observed the plaintiff on Dec. 23, 1957 and there appeared to be a considerable amount of stiffness “in all joints of the above mentioned finger;” that during the time of treatment various forms of heat and muscle stimulation were used but that on the last treatment day “all joints of the second finger *883 could be passively moved through their full ranges of motion.” At no place in the report did he state that the plaintiff could actively, on his own volition, move or flex the joints of the injured finger. (Emphasis added.)
Dr. Richard Levy, testifying only as a neuro-surgeon, thought that the plaintiff could perform heavy labor, but when asked if a stiffened finger would not get in the way and endanger the rest of his hand answered :
“A. Now, I would like to limit my discussion to the neuro-logical disease which this patient has * * * at least which I found the patient to have * * * namely, numbness of the finger, excluding the ability to flex the finger, * * * and then state that numbness of the skin of the left index finger would not incapacitate this man to work as a laborer.
“Q. You prefer not to comment, then * * *
“A. I really would prefer not to comment. I think it is out of my field since it involves muscles,- tendons, bones and joints.”
Counsel for defendants lays stress upon the testimony of Dr. Boustany, a general practitioner, who treated the plaintiff and who had scheduled surgery for the latter, but before operating at St. Ann’s Infirmary he stated that he was not too impressed with the fact that the plaintiff could not flex his finger so he called Dr. LeBlanc of White Castle and discussed the case with him. Some of the doctors thought that the plaintiff had suffered a tendon injury which explained his inability to bend his finger and Dr. Boustany thought that could be the only reason for this disability so before operating he called Dr. LeBlanc to ascertain if he had noticed or seen any lacerated or severed tendons or whether he had repaired a tendon and the doctor told him “No, of course not.” Dr. Boustany, after the conversation with Dr. LeBlanc, re-examined the plaintiff and testified that in the course of the examination he noted that plaintiff could actually flex the finger. This positive testimony is definitely limited by following testimony of this doctor. He was asked:
“Q. Was this in the hospital, Doctor?
“A. Yes. While he was in the hospital I more or less got him off his guard and he flexed the index finger. He was able to move it.
“Q. Did that satisfy you then, Doctor, to the effect that there was no tendon damage?
“A. Yes, that satisfied me so I told him that being he could move it that in due time he would be able to completely flex that finger so I didn’t want to proceed with the surgery so we can-celled the exploration.” (Emphasis added.)
Dr. Boustany was of the opinion that the plaintiff was able to return to work. Dr. Boustany seemed to doubt the sincerety of the plaintiff, however, his previous record would belie such doubt. He had never had any other claim for compensation, and had been a hard worker most of his life. He spent approximately 35 years farming and then went into general labor in order to support his family. None of the other doctors even intimated that this man was malingering in any respect, and the majority believed that his complaints of pain in the hand were genuine and could be based upon the objective symptoms they found. Even Dr. Boustany admitted on cross examination that the plaintiff did not have a completely normal hand at that date, although he did state that he thought with proper use and exercise that plaintiff would rehabilitate the hand.
The lower court concluded from the testimony, after hearing and seeing the witnesses who actually testified, including the plaintiff, that the latter was permanently *884 and totally disabled to perform the duties of a laborer due to the condition of his hand and the pain which the plaintiff described as being in the hand and in the arm. Counsel for defendants attempts to distinguish the cases relied upon by the lower court by virtue of the fact that in the cited cases the injured plaintiff had attempted to work whereas in the case at bar plaintiff had made no attempt to work. We cannot see that this makes any difference if the plaintiff actually had the pain which he complained of and which the medical testimony shows there were objective symptoms which would justify such complaints on the part of the plaintiff. If he actually had the pain whether he attempted to work is immaterial. The lower court in its written reasons cited and quoted from the case of Reed v. Calcasieu Paper Company, 233 La. 747, 98 So.2d 175, 178 which followed the case of Brannon v. Zurich General Accident & Liability Insurance Company, 224 La. 161, 69 So.2d 1, in which it was stated:
“ ‘The law does not expect, and it does not contemplate, that a worker in order to make a living, must work in pain, or that he do so when it will materially increase not only the hazards of his own health and safety, but also to those of his fellow employees. This is the settled jurisprudence of all of the appellate courts of this state. See, Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 141 So. 9; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Carlino v. U. S. Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Lee v. International Paper Co., La.App. 16 So.2d 679; Brown v. Furr, La.App., 19 So.2d 283; Schneider v. Travelers Insurance Co., La.App., 172 So. 580; Hibbard v. Blane, La.App., 183 So. 39; Rigsby v. John W. Clark Lumber Co., La.App., 28 So.2d 346; Murphy v. B. Mutti, Inc., La.App., 166 So. 493; Godeaux v. Travelers Ins. Co., La.App., 58 So.2d 427; Anders v. Employers Liability Assur. Corp., La.App., 50 So.2d 87; Stansbury v. National Auto & Cas. Ins. Co., La.App., 52 So.2d 300; and Newsom v. Caldwell & McCann, La.App., 51 So.2d 393. See, also, the additional authorities cited and discussed by Malone in his work on the Louisiana Workmen’s Compensation Law and Practice, Sections 272-275.’ ”
We not only find no manifest error in the judgment of the lower court but believe that it is entirely correct as being supported by the evidence and the law.
Judgment affirmed.