LANDRY, Judge.
Defendant herein, Aetna Insurance Company (sometimes hereinafter referred to simply as “Aetna”) prosecutes this appeal from the judgment of the lower court awarding plaintiff, Horace K. Joseph, workmen’s compensation benefits in the sum of $35.00 weekly for a period of 40 weeks. The factual issues presented by the instant appeal are concerned with determination of plaintiff’s alleged disability and its purported relation to the accident from which it assertedly arose.
Plaintiff avows his injury, a lumbosacral strain, occurred March 18, 1961, while performing his duties as a carpenter in the employ of Pennington & Lee, General Contractor, the insured of Aetna. In this connection plaintiff testified he injured his back while attempting to slide a 250 pound section of concrete pipe into place in a ditch. Plaintiff concedes he did not report this accident to his employer and the record contains no proof of such mishap other than plaintiff’s uncorroborated statement. Plaintiff acknowledges he continued work, although in some pain, until April 27, 1961, when he aga-in injured his back as he was fitting a door into its frame. He completed his day’s. work, informed his employer of the accident and reported the next day to the Reiger Clinic for treatment. Although defendant disputes the occurrence of the first accident, the issue thus raised is of no consequence inasmuch as the happening of the latter event is conceded and the prime question before the court is the duration of the disability plaintiff sustained as a result thereof.
Called as a witness on behalf of plaintiff, Dr. Frank G. Reiger testified from his rec *764 ords that plaintiff was first seen by Dr. Jack Loupe, on April 28, 1961. Plaintiff’s condition was diagnosed as lumbo-sacral strain, the cure of which should entail four to six weeks complete rest and treatment. To relieve plaintiff’s complaint of back pain, an injection of Robaxin, a muscle relaxant was administered. Oral antispasmodics and heat applications were prescribed and plaintiff directed to sleep on a hard bed. According to Dr. Reiger, plaintiff was seen on a total of 21 occasions commencing with the aforesaid initial visit of April 28, 1961, and terminating July 10, 1961. On these numerous instances plaintiff was variously seen by Dr. Jack Loupe, who was no longer associated with the Rei-ger Clinic, Dr. Jere D. Melilli and Dr. Rei-ger. Although an X-ray was taken during the course of plaintiff’s treatment, Dr. Rei-ger was not questioned as to whether it revealed anything of significance. During the interval plaintiff was in attendance at the Reiger Clinic, he received physical therapy twice a week and an occasional sonulator treatment. On July 10, 1961, plaintiff was discharged by Dr. Loupe. In a subsequent report to defendant dated July 2S, 1961, Dr. Loupe stated appellee was cured as of July 10, 1961, and answered in the affirmative the query “Is patient capable of doing same work as before injury?” It further appears that Dr. Loupe advised plaintiff to resume light work as of July 10, 1961.
Plaintiff maintains he was first seen by Dr. Melilli despite the records of the Reiger Clinic which indicate he was examined initially by Dr. Loupe who, incidentally, was not called as a witness by appellee. According to plaintiff, he was advised by Dr. Melilli to remain in bed for six weeks. Plaintiff, however, remained in bed for approximately five weeks, resumed his employment and after 16 or 18 days at work “pulled the muscle again”, after which incident he felt he was unable to continue his trade and resigned his job.
On August 3, 1961, plaintiff was seen again by Dr. Reiger. Plaintiff advised Dr. Reiger that he had attempted to work but was in pain. Dr. Reiger administered a sonulator treatment together with an injection of a drug known as B-12 and advised plaintiff to persist in continuing to work.
Dr. William E. Smith, orthopedist, examined plaintiff on January 12, 1962, at the request of appellant, Aetna. X-rays proved negative of objective symptoms. Extensive bending and leg raising tests conducted by Dr. Smith all were found to be within normal limitations and disclosed nothing of orthopedic significance. Dr. Smith found nothing from which he could relate appel-lee’s complaints of leg pain, back pain and numbness to the accidents plaintiff narrated.
Several months subsequently, on January 18, 1962, plaintiff returned to Reiger Clinic with substantially the same complaints of back and leg pain as he had previously recounted. Dr. Jere D. Melilli, who saw ap-pellee on that particular visit, testified plaintiff then “was still complaining of weakness in his left leg following strenuous activities and that was essentially the sum total of it.” Dr. Melilli saw plaintiff again on January 30, 1962, on which occasion he made an appointment for plaintiff to be examined by Dr. Thomas Campanella, orthopedist.
On February 2, 1962, Dr. Campanella examined appellee who complained of tenderness in the region of L-4 and pain in that area upon bending backward. Numerous bending and leg raising tests conducted by Dr. Campanella failed, however, to reveal any objective symptoms whatsoever. Because of plaintiff’s subjective complaints of back pain Dr. Campanella prescribed a corset to avoid the discomfort plaintiff recited he felt upon bending backward. Dr. Campanella testified he was unable to relate plaintiff’s complaints of pain to the accident history given.
Plaintiff returned to Reiger Clinic twice in February, once in March and finally on April 4, 1962, on which latter occasion he stated he had again injured his bade.
*765 According to plaintiff, on the occasion of his last visit to the clinic on April 4, 1962, he was informed by a receptionist that the insurance company had paid his bill and he could receive no further treatment from the clinic. He further testified he then went to Dr. Champagne whom he continued to see for some time thereafter. In essence plaintiff stated he was unable to work for two years following the accident because of pain but that at the time of trial in October, 1964, he had resumed his occupation as carpenter.
Dr. Loupe was not called as a witness, it appearing he has since moved to New Orleans. Failure of counsel for appellee to take his deposition may perhaps be explained by the fact both his partners were available as witnesses.
However, Dr. Champagne, who treated plaintiff during a considerable portion of the time plaintiff was purportedly disabled, was not called on plaintiff’s behalf. Apparently our learned brother below applied to such failure the well established rule which presumes the testimony of the witness would have been unfavorable to appel-lee. We believe this to be true because the trial judge awarded compensation from the date of the accident only to April 4, 1962, on which date plaintiff returned to Reiger Clinic stating he had reinjured his back and on which date he also consulted Dr. Champagne.
It is well established in our jurisprudence that an injured workman is not required to work in pain and that following an accident, an employee who can perform the ordinary and usual tasks of his employment only in appreciable or substantial pain is considered disabled within the meaning and intendment of our Workmen’s Compensation Act. Viator v. Hub City Contractors, 116 So.2d 878; Hebert v. Your Food Processing & Warehouse Co., La.App., 170 So.2d 765.
It is equally well settled that plaintiff in a compensation action must establish his claim by a preponderance of evidence to that degree of certainty required by law. Speculation, conjecture, mere possibility, and even unsupported probability are not sufficient to support an award for workmen’s compensation benefits. Roberts v. M. S. Carroll Co., La.App., 68 So.2d 689; Borner v. City of Shreveport, La.App., 169 So.2d 627.
In order to recover workmen’s compensation benefits, an employee must establish a causal connection between the accident occurring within the course and scope of his employment and the disability alleged resultant therefrom. Houston v. Atlas Sewing Centers, Inc., La.App., 121 So.2d 301.
The learned trial court, in his written reasons for judgment, found that the injuries allegedly received by appellee on April 27 and March 18, 1961, were related. He also found appellee injured his back in the first instance but continued to work despite the accompanying pain. In commenting whether the medical evidence could relate the injury to the initial accident, he concluded: “Dr. Melilli and all of them cannot relate it back to that, but yet on the other hand, I don’t think they can discard it or rule it out. That would be hard to do, too.” In the latter conclusion we believe our able brother below erred in that he shifted the burden of proof from appellee to appellant. It was not incumbent upon defendant to rule out a connection between the accident and resulting injury, the onus lay upon ap-pellee to affirmatively establish such connection in order to prove his claim.
Assuming arguendo, the occurrence of both accidents narrated by plaintiff, the question of injury and disability resulting therefrom is a matter involving a medical determination. Where the medical testimony is conflicting, lay testimony may be considered, but where there is no such conflict, lay evidence may not be regarded. Sellers v. T. J. Moss Tie Co., La.App., 56 So.2d 878. In addition, where there is hope *766 less conflict in the medical testimony and the court must rely on subjective symptoms alone, considerable weight will be given the testimony of the injured employee, this rule, however, is without application absent a conflict in the medical evidence. Barnett v. Walther Bros. Co., La.App., 59 So.2d 487. The analysis of expert testimony here-inabove set forth clearly reveals no conflict or dispute regarding the expert testimony. On the contrary, the medical evidence regarding plaintiff's disability is clearly and overwhelmingly to the effect appellee was able to resume his employment on July 10, 1961.
In the instant case plaintiff has failed to establish to that degree of certainty required by law that the pain he allegedly experienced subsequent to July 10, 1961, is causally related to the accident in question. Moreover, the preponderance of expert testimony is clearly to the effect plaintiff was able to resume his employment without experiencing substantial pain as of July 10, 1961.
We find the judgment of the trial court awarding plaintiff 40 weeks compensation contrary to the evidence inasmuch as it allows benefits beyond the period of disability established by appellee. Plaintiff is entitled to compensation from April 28, 1961, until July 10, 1961, at the rate of $35.00 per week. Defendant paid compensation for six weeks. Although the Reiger Clinic’s initial prognosis report indicated plaintiff should be able to resume work six weeks following injury, the fact remains plaintiff was not discharged as able to work until July 10, 1961. Plaintiff therefore, is entitled to compensation until the date of his medical release.
For the reasons hereinabove set forth, it is ordered, adjudged and decreed the judgment of the trial court be and the same is hereby amended in that judgment is rendered herein in favor of plaintiff and against defendant for workmen’s compensation benefits in the sum of $35.00 per week for the period April 28, 1961, to July 10, 1961, at the rate of $35.00 per week, subject to a credit of six weeks compensation paid by defendant, together with interest at the rate of 5% per annum from due date of each unpaid weekly benefit, until paid. All costs to be paid by appellant.
Amended and affirmed.