BLANCHE, Judge.
Plaintiff-appellee, Mrs. Lessie Bryant, a nurse’s aid employed by the Slidell Memorial Hospital, instituted suit against her employer and its insurer, The Travelers Insurance Company, for total and permanent workmen’s compensation benefits. The trial court found the plaintiff to be totally and permanently disabled and granted judgment in her favor for $26.39 per week for a period of 400 weeks. From the judgment the defendants have appealed and assigned as error the trial judge’s finding that plaintiff sustained the burden of proof in establishing the accident and alternatively in giving plaintiff disability benefits beyond July 7, 1969.
Plaintiff alleges that she was injured when she and a co-employee, Mrs. Barbara Owens, were attempting to ambulate a very heavy patient. The trial judge believed that the plaintiff sustained an injury in the course of her employment, and in his Reasons for Judgment commented:
“The record will reflect that there is a substantial conflict in the testimony as to whether or not the plaintiff actually sustained an accident while at work which caused the injuries of which she complains.
“I must bear in mind the liberality of the workmen’s compensation statute, and although there was an attempt to impeach the plaintiff’s testimony, I do believe that she sustained enough of an ac *286 cident while at work to warrant a finding in her favor.” (Reasons for Judgment, Record, p. 38)
Mrs. Bryant’s version of how the accident occurred is as follows:
“Q Now, tell the Court how you injured your back.
“A Well, we got the patient on her feet and she walked a couple or three steps and then she didn’t want to walk and she started pulling back and we had to hold to her to keep her from falling and she pulled back and when she pulled back, she pulled back near the bed and I changed hands and reached for the bed, holding her and the bed and that’s when I realized that my back, I felt pain in my back.” Record, p. 102)
While Mrs. Bryant testified that the patient had to be held to keep from falling, Mrs. Barbara Owens testified:
“Q Then what happened?
“A We went approximately four feet from the bed and the patient decided to sit down back on the bed and we kept telling her if she sat down there, she would be in the floor because the bed was not behind her and she started sitting down anyway and we had a hold of her arms and before she went on down, she decided we were telling the truth and the bed wasn’t behind her, or something, but anyway, she held her weight and we got her back in bed.
“Q She did hold her own weight?
“A Yes, sir, it would have [been] impossible for us to hold her up.” (Record, p. 134)
She further testified on cross-examination in answer to a question of whether it was possible that a strain could have been placed on either her or Mrs. Bryant, “I know there was no strain placed on me.” (Record, p. 138)
While the circumstances of the patient resisting an effort to be ambulated lends believability to plaintiff’s testimony that she strained her back as a result of this activity, her credibility becomes all-important, as we only have her word for it. After having been placed on her guard, plaintiff denied ever having back trouble prior to June 16, 1967, and denied having told anyone that she hurt her back while hanging curtains in her home.
Mrs. Barbara Owens, when asked if Mrs. Bryant made any statement to her that day about her back, answered:
“Q Did she make any statement to you that she had hurt her back?
“A At that time?
“Q Yes.
“A No.
“Q Did she make any statement to you that day about her back?
“A Well, when we were on our coffee break, we were talking about the patient and how she wanted to sit on the floor, and Mrs. Bryant said before she would hurt her back again, she would let the patient hit the floor.
“Q Mrs. Bryant told you that ?
“A Yes, sir.
“Q Was that on the same day?
“A Just a few minutes later.” (Record, p. 135)
Another witness, Louise Holmes, who was also employed as a nurse’s aid at the Slidell Memorial Hospital, testified that she worked with plaintiff every day and rode back and forth to work with her. When asked if the plaintiff ever made any statement to her about hurting her back, she answered as follows:
“Q Do you recall her making a statement or statements to you about her back?
*287 “A Well, not too long before the incident that happened at the hospital, she told us, she was off her two days off from work, and she told us that she was hanging curtains and fell and hurt her back.
“Q That she was hanging curtains and fell and hurt her back.
“A Had fell and hurt her back * * *
“Q And how long was this prior to the. 16th of June?
“A That wasn’t too long after she went around telling everyone she hurt her back at the hospital.
“Q After this, she told you she hurt her back at the hospital, is that correct ?
“A Yes, sir.” (Record, p. 146)
Mrs. Holmes’ testimony is further corroborated by that of Mrs. Nola Miller, who also worked with plaintiff at the hospital and rode with her to work, as follows:
“Q Do you ever recall Mrs. Bryant making a statement to you regarding hurting her back?
“A Yes, sir, one morning we was going to work and she she [sic] had been off a few days and on the way to. work, she complained about her back hurting her.
“Q What did she tell you about her back?
“A Said she had been cleaning her house and hanging curtains.
“Q And what else?
“A She fell.
“Q And what else ?
“A She had been cleaning house and hanging curtains and she hurt her back,
“Q Did she tell you this before or after June 16th, 1967?
“A Before.” (Record, p. 156)
We further note that though Mrs. Bryant told her fellow employees of the incident of hurting her back while hanging the curtains, which was in point of time prior to June 17th, the date of her accident, she did not report the accident to her superiors until July 20, 1967, a period of approximately five weeks after the accident.
Again, after having been placed on her guard, plaintiff’s testimony was impeached in another respect. She denied having been asked to leave her employment at the Slidell Memorial Hospital because of having indulged in alcoholic beverages. In this connection Mrs. Louise Holmes testified as follows:
“Q Has Mrs. Bryant ever been asked to leave the hospital? ■
“A One time that I know of.
“Q Of your own personal knowledge, do you know why she was asked to leave ?
“A Well, we didn’t ride-together that day and they came over to pick me up and she came in later and she was sick. Mrs. Harden, I’m sure that’s who it was, told her she could go home and she was smelling of liquor.” (Record, p. 147)
Mrs. Nola Miller, in this connection, testified:
“Q Let me ask you this then. Do you know of your own personal knowledge why Mrs. Bryant left the hospital ?
“A She was intoxicated when she walked in. Mrs. Bryant didn’t ride in with us that morning because we waited for her and she was late and we drove on to Slidell and after I got to Slidell, she came in later.
“Q You saw her when she came in?
“A Yes, I saw her because I was standing on the main hall, talking to a *288 nurse and they asked why she didn’t come in and I said I didn’t know, we didn’t see her. Then when she did come in, she was intoxicated.” (Record, p. 158)
On cross-examination while Mrs. Miller stated that she did not observe or talk with Mrs. Bryant on that particular day, nor did she smell anything on her, she could tell by the way Mrs. Bryant walked that she was intoxicated.
The trial judge’s reference to the liberality of the workmen’s compensation statute does not apply to the proof that an accident occurred, or, if it did occur, that it caused disability. Meshell v. Sabine Lumber Company, 137 So.2d 70 (La.App. 3rd Cir. 1962); Carter v. Dinkeldein, 125 So.2d 201 (La.App. 4th Cir. 1960); Buller v. Travelers Indemnity Company, 118 So.2d 134 (La.App. 1st Cir. 1960); Carter v. Casualty Reciprocal Exchange, 163 So.2d 855 (La. App. 2nd Cir. 1964).
Other than plaintiff’s own testimony and the fact that the activity engaged in by her could produce the type of injury complained of, there is no other evidence to prove the accident. Carter v. Casualty Reciprocal Exchange, supra, states the long-established rule:
“The rule, however, is well established that the testimony of a plaintiff alone, in a workmen’s compensation case, is sufficient to establish the occurrence of an accident, if there is nothing to discredit his account thereof and where his statements are supported by the surrounding circumstances. Gray v. Southern Farm Bureau Casualty Ins. Co., La.App., 2d Cir., 1961, 134 So.2d 588; Fouchea v. Maloney Trucking & Storage, La.App., Orleans, 1959, 108 So.2d 273; Wyatt v. Consolidated Underwriters et al., La.App., 2d Cir., 1957, 98 So.2d 537; France v. City of New Orleans, La.App., Orleans, 1957, 92 So.2d 473; Roy v. Guillot, La. App., 2d Cir., 1955, 84 So.2d 469 (writ denied); Dolhonde v. Gullett Gin Co., La.App., 1st Cir., 1946, 25 So.2d 104.” (163 So.2d at 857)
 Therefore, the ultimate issue here is whether the plaintiff has shown sufficient corroborating circumstances to support her own testimony as to the occurrence of the accident and provided further that there is nothing to discredit the same. Fulfillment of these requirements satisfies the general legal requirement that in a workmen’s compensation case plaintiff bears the burden of proving a disabling accident at work by a preponderance of the evidence. Proof by a preponderance of the evidence requires only that the evidence as a whole shows that the fact sought to be proved is more probable than not. Town of Slidell v. Temple Const. Co., 246 La. 137, 164 So.2d 276 (1964) ; Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963); Perkins v. Texas & New Orleans Railway Co., 243 La. 829, 147 So.2d 646 (1962); Dunphy v. Liberty Mutual Insurance Company, 177 So.2d 610 (La.App. 3rd Cir. 1965).
The above and foregoing review of the evidence leads us to conclude that the trial judge committed manifest error in accepting plaintiff’s word as to the occurrence of the accident in light of the insufficiency of the corroborating circumstances surrounding the accident and the discrediting nature of the witnesses’ testimony concerning plaintiff’s own version of the accident.
Accordingly, plaintiff failed to carry the burden of proof, and the judgment of the trial court is reversed. All costs are to be borne by plaintiff-appellee.
Reversed and rendered.