289 So.2d 535 (1973)
Thelma RABY et al.
v.
EAST BATON ROUGE PARISH SCHOOL BOARD.
No. 9633.
Court of Appeal of Louisiana, First Circuit.
December 17, 1973.
Rehearing Denied February 11, 1974.
Writ Refused April 5, 1974.
*536 Arnold J. Gibbs, Baton Rouge, for appellants.
Aubrey L. Moore, Baton Rouge, for appellee.
Before SARTAIN, TUCKER and WATSON, JJ.
TUCKER, Judge.
Plaintiffs Thelma and Felix Raby sued for workmen's compensation benefits for injuries sustained by Mrs. Raby in the course and scope of her employment as an assistant cook and kitchen helper at the Robert E. Lee High School lunchroom in Baton Rouge, Louisiana. Plaintiff Thelma Raby was first injured while moving heavy tables preparatory to mopping the lunchroom floor in August, 1966. On March 18, 1968, while performing similar duties during the course of her regular employment she reinjured her back, which caused an additional injury to her left leg. As a result of the latter injury plaintiff was hospitalized on three separate occasions, placed in traction several times, required to undergo surgery and confined to limited movement, including periods spent on bed boards. Plaintiff contends that she is totally and permanently disabled as a result of her injuries; that she has developed an emotional and nervous condition as a result of her injuries, and can work only in great pain. She claims that she is entitled to an award for workmen's compensation benefits at the rate of Thirty-five and no/100 ($35.00) Dollars per week for four hundred (400) weeks, plus medical expenses not to exceed $2,500.00, reasonable attorney's fees, plus a penalty of 12% on all weekly compensation payments due for alleged arbitrary and capricious failure to make payments to plaintiff minus the amount already paid by the East Baton Rouge Parish School Board. The School Board paid plaintiff workmen's compensation benefits from October 3, 1966, until October 3, 1969, discontinuing such benefits because plaintiff's orthopedist reported that she was able to return to work. Medical expenses have been paid in plaintiff's behalf in the amount of $2,374.46.
Relying upon the report of the orthopedist, Dr. Richard Means, the trial court found plaintiff to have a 20% permanent disability and held that she was capable of resuming her usual work. Accordingly judgment was given in her favor in the amount of $4,460.00 in workmen's compensation benefits, plus medical expenses of $125.54.
Plaintiffs have appealed from this judgment, specifying five grounds of error, all centering in the failure of the trial court to find plaintiff permanently and totally disabled, in failing to find that pain was a factor in her alleged total and permanent disability, in allegedly misconstruing the medical evidence, and in holding that plaintiff is not totally and permanently disabled when she is not able to return to the same kind of work as that in which she was engaged prior to her injuries.
We concur in the trial judge's finding that plaintiff Thelma Raby sustained a 20% permanent disability as a result of her injuries in the course and scope of her employment. We quote from the trial judge's review of the medical evidence in support of this finding.
"Mrs. Raby was first attended to by Drs. H. P. Armstrong and Edward McCool in August and September of 1966. She continued to see Dr. McCool during 1967 and 1968. Early in 1968 Dr. McCool referred Mrs. Raby to an orthopedic surgeon, Dr. Moss M. Bannerman, for evaluation. In August of 1968 Dr. McCool again referred Mrs. Raby to an orthopedic surgeon, Dr. Richard B. Means, an associate of Dr. Bannerman's, for `a myelogram and probable disc excision.' Dr. Means found a herniation of the L-4 disc, said disc being removed by surgery on October 10, 1968. Following surgery, *537 Mrs. Raby continued to see Dr. Means, who followed her progress during the convalescent period. Pursuant to a visit by Mrs. Raby on September 24, 1969, Dr. Means noted that Mrs. Raby had recovered and was capable of resuming her usual work. Cessation of workmen's compensation benefits being paid to Mrs. Raby took place the following month, on October 3, 1969. She had been receiving payments of $70.00 every two (2) weeks up until that date.
Mrs. Raby began seeing Dr. William M. Moody, a general practitioner, on February 16, 1970, and continued to consult him until October 2, 1972. Dr. Moody's considered opinion was that there was a definite residual disability which was permanent in nature. Dr. Moody preferred to defer to the opinion of an orthopedic surgeon as to the degree of permanent impairment but estimated the percentage to range from 20-30%. Mrs. Raby's last visit to Dr. Moody was on October 2, 1972, at which time Dr. Moody felt that she had a ruptured disc and needed surgery, suggesting that she be sent to an orthopedic surgeon.
"Mrs. Raby also saw Dr. McCool one other time, on February 13, 1971. Dr. McCool felt that Mrs. Raby had possibly developed another lower lumbar protruding disc. He also was of the opinion that Mrs. Raby would be permanently disabled with reference to strenuous activity, including lifting, stooping, bending, and other similar activities, said disability extending to an undetermined period of time.
However, Mrs. Raby had seen Dr. Means again on September 4, 1970, at which time he repeated his earlier diagnosis of September 24, 1969, to the effect that Mrs. Raby was capable of returning to her usual work. He noted that although Mrs. Raby complained of pain with motion, there was a good range of motion of the low back. There was also no weakness or paralysis present in the lower extremities. Dr. Means felt that Mrs. Raby displayed approximately 10% permanent disability.
On February 9, 1972, and on October 18, 1972, Dr. Means reexamined Mrs. Raby. In February, 1972, Mrs. Raby still reported back paid (sic) with radiation into the lower left extremity but examination revealed no limitation of back motion and no muscle spasm present in the paraspinal muscles of the back. Sensation and motor function were found to be unimpaired in the lower extremities. Dr. Means concluded that Mrs. Raby's permanent disability had risen to approximately 20%, being severe enough to prevent her from engaging in strenuous work. However, by October, 1972, Dr. Means' opinion was that the degree of permanent disability was 10% and that Mrs. Raby was capable of continuing her usual work.
By report dated February 26, 1973, Dr. Bannerman, prefacing his estimate with the statement that he had not seen Mrs. Raby sufficiently to arrive at a percentage of permanent disability, approximated such to be 15 to 20%.
Lay testimony was given by Mrs. Raby, her husband, other relatives, two past co-workers from the school lunchroom and several neighbors. Mrs. Raby stated that she was unable to do any work of a strenuous nature as a result of her injuries and that she still experienced considerable pain in her back and left leg. She felt that her condition had not improved after the operation in October, 1968. Her husband and sister concurred in this view. Others testified that they helped Mrs. Raby do her housework because she (Mrs. Raby) was unable to do so. Further, testimony that Mrs. Raby walked with a limp came from several sources. Past co-workers of Mrs. Raby stated that Mrs. Raby's lunchroom duties included lifting heavy pots, moving tables and mopping.

*538 The medical reports are unanimous in stating that Mrs. Raby suffers a residual permanent impairment ranging from 10-30%."
In concluding that plaintiff had sustained a 20% permanent disability and that this did not constitute total and permanent disability in her case, the trial judge relied heavily upon the opinion of Dr. Means as follows:
"... Dr. Means was the orthopedic surgeon who operated on petitioner and saw her thereafter over a four-year period. In October, 1972, he pronounced Mrs. Raby capable of continuing her usual work. This statement was the latest in date relative to Mrs. Raby's work potential. The Court considers Dr. Means' final evaluation especially forceful for the following reasons: (1) Dr. Means treated Mrs. Raby over a four-year period; (2) he was the specialist (orthopedic surgeon) who performed the operation (herniated disc excision) on Mrs. Raby; (3) his final examination of Mrs. Raby, on October 18, 1972, on the basis of which he reported Mrs. Raby as ready to resume her usual work, postdated other medical reports regarding Mrs. Raby's work capability. Additionally, the reports of the general practitioner, Dr. Moody, made numerous references for the need of an orthopedic surgeon, such as Dr. Means, to examine Mrs. Raby. Finally, Dr. McCool's last visitation with Mrs. Raby was on February 13, 1971, over a year and a half before Dr. Means' final evaluation.
Dr. Means was well acquainted with Mrs. Raby's complaints appertaining to the pain in her back and left leg. Inasmuch as Dr. Means, knowledgeable of all the above pertinent factors, diagnosed Mrs. Raby as capable of resuming her usual work, the Court finds itself in accord and so holds as a matter of fact."
It is evident to us that the trial judge did consider plaintiff's pain as a factor in her disability, as did Dr. Means in every report he submitted on her. Our conclusion, based upon that of Dr. Means, which the trial judge also used, is that plaintiff's pain is not sufficiently disabling to find her totally and permanently disabled.
The trial judge was correct in giving the most credence to the testimony of the specialist in this case, Dr. Means. Meche v. Maryland Cas. Co., 204 So.2d 719 (La.App. 3d cir. 1967) and Blue v. Kinney Co., 256 So.2d 145 (La.App. 3d cir. 1971). Both of the orthopedists in this case, Drs. Bannerman and Means, were subpoenaed by plaintiffs, although by stipulation of counsel their medical reports were filed in the record in lieu of their appearance in court. An adverse presumption must be given to any attempt at this point by appellants' counsel to discredit the orthopedists' report, due to plaintiffs' failure to require their attendance and testimony in court. Lay testimony cannot be considered in this compensation proceeding where there is no serious dispute among the medical experts. Hebert v. Your Food Processing and Warehouse Co., 170 So.2d 765 (La.App. 1st cir. 1964) and Joseph v. Aetna Ins. Co., 183 So.2d 762 (La.App. 1st cir. 1966).
We also concur in the trial judge's rejection of emotional and nervous conditions as factors in disability inasmuch as there was no psychiatric testimony proffered to substantiate these allegations. The court's acceptance of laymen's unsupported testimony as to nervousness and emotional disability would be highly suspect.
Although it conceded that a liberal construction is due the Workmen's Compensation Act, a claimant thereunder is still required to prove his or her case by a preponderance of the evidence. Bryant v. Slidell Memorial Hospital, 243 So.2d 285 (La.App. 1st cir. 1970), Hawkins v. Orleans Parish School Board, 254 So.2d 276 (La.App. 4th cir. 1971) and Griffin v. Hochendel, 263 So.2d 474 (La.App. 4th cir. 1972). The medical record in this case *539 amply supports the findings and opinion of the trial judge, and conversely does not support plaintiff's allegations of total and permanent disability as a result of her work-caused injuries.
In awarding plaintiff compensation on the basis of a 20% permanent disability the court observes that payments have already been made and are due plaintiff according to the following schedule:

4/1/68-10/3/69 Maximum benefits of $35.00 per week for 74
 weeks, plus several smaller increments advanced
 prior to 4/1/68 $2,897.27
10/3/69-2/13/71 Statutory weekly minimum of $10.00 per
 week, for 71 weeks (until time that Dr.
 McCool declared plaintiff incapable of strenuous
 work) 710.00
2/13/71-10/18/72 Maximum benefits of $35.00 per week for
 88 weeks when plaintiff was temporarily
 totally incapacitated until Dr. Means declared
 that plaintiff was ready to resume
 her usual work. 3,080.00
10/18/72- Minimum benefits of $10.00 per week for 67
 weeks until the total of 300 weeks is
 reached. 670.00
 _________
 $7,357.27

We concur in the award of the trial judge of compensation benefits totalling $4,460.00, plus medical expenses in the amount of $125.54, any further award for medical expenses being prevented by the statutory limitation of $2,500.00 imposed by R.S. 23:1203.
In our opinion the defendant School Board was not capricious or arbitrary in its refusal to make payments to plaintiff after her orthopedist reported that she was able to resume her usual work; hence there is no legal justification to award penalties or attorney fees.
For the foregoing reasons the judgment of the trial court is affirmed at the appellants' costs.
Affirmed.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge ad hoc (dissenting):
On review of the record in the captioned case I find that I do not agree with the majority, which affirms the trial court in allowing compensation for 20 percent partial permanent disability and disallowing the claim for total and permanent disability. At the outset, and on the face of the finding of fact by the trial court that the plaintiff is suffering from a 20 percent partial permanent disability of the body as a whole, I find it difficult to conclude that a 50-odd year old, obese, female cafeteria worker whose job includes sweeping, mopping, lifting large pots and pans of cafeteria food and moving tables and chairs is not totally and permanently disabled. This is particularly true when the fact is considered that the plaintiff suffered this type of injury in 1966 and then suffered the same type injury, or an aggravation thereof, in her same work in 1968 following which she had a laminectomy and continued to have difficulty with her back thereafter.
The trial court and the majority place heavy emphasis on the opinion of the operating physician who stated his opinion that plaintiff could return to her usual work.
*540 As far as I have been able to determine from the record, at no point did this physician, Dr. Means, state that plaintiff could return to work without pain. There is the positive testimony that she would suffer pain in the evidence given by Dr. Moody and Dr. McCool. Dr. Moody saw her five or six times as a general practitioner; he said that she is having pain in the lower back and the lower left leg which in his opinion is permanent. He also positively testified that she would have to work in pain if she worked. The other physician who saw her after her laminectomy is Dr. McCool. This thoracic and general surgeon, who had seen her a number of times before the operation as her original treating physician and who most recently saw her on February 13, 1971, found that she had complaints of pain in the low back and the left leg, and gave her pain medicine, and found her permanently disabled to do strenuous activity including lifting, stooping, etc. Dr. McCool also saw her on January 31, 1972 and stated in his opinion at that time that she had another herniated disc.
The operating orthopaedic surgeon, when he saw her in February of 1972, found tenderness and a 20 percent disability, and concluded that she could not return to strenuous work. Then, on October 18, 1972 he awarded her a 10 percent permanent partial disability and said that she was capable of carrying out her usual work. It is anomalous that when Dr. Means found her 20 percent disabled he concluded she could not do her regular work; however, the trial court found as a fact that she was 20 percent disabled, but that she could perform her regular work.
There is no question that the evidence of a specialist is entitled to more weight than that of a general practitioner and that the evidence of the attending physician is entitled to more weight than the one who examines her merely for the purpose of litigation. As I appreciate the situation here, all three of these doctors actually saw plaintiff for treatment, gave her pain medicine, and are well familiar with her situation. It is true that Dr. Means was the operating physician, but it is also true that the physician who operates is sometimes better impressed with his result than are others. The cases are legion in the field of workmen's compensation law that persons are not required to work in pain. The trial judge did not specifically make a finding on this point; I find the medical evidence in the record to preponderate in favor of a factual finding that plaintiff would suffer substantial pain if she returned to her usual work, and therefore, I believe the medical evidence establishes total and permanent disability.
However, even construing the evidence most favorably to the employer, it reflects a conflict in the medical which would require reference to the plaintiff's testimony, to her medical history, and to the evidence given by friends and neighbors, which would establish that she is totally and permanently disabled.
I respectfully dissent.