HALL, Judge.
Plaintiff, an injured employee, filed this suit against his employer and his employer’s compensation insurer praying for judgment in the sum of $1,750.24, representing medical expenses incurred by him in excess of the statutory amount pursuant to the provisions of an “Additional Medical Expense Endorsement” attached to and forming part of his employer’s workmen’s compensation insurance policy. Plaintiff *901 also prayed for interest, statutory penalties and attorney’s fees. Following trial on the merits judgment was rendered in plaintiff’s favor for $1,750.24 plus interest and costs. Since the judgment is silent as to penalties and attorney’s fees they are considered as having been denied. Defendants appealed. Plaintiff answered the appeal praying that the judgment be amended to include the penalties and attorney’s fees.
The facts are not in dispute. Plaintiff sustained a back injury on March 8, 1962 while carrying a corpse down a stairway. He was employed as a licensed mortician and funeral director by the defendant employer, Tharp-Sontheimer-Tharp, Inc., d/b/a Westside Funeral Homes Company. He reported the accident to his employer on March 9, 1962. His employer did not send him to a doctor so plaintiff consulted his own physician, Dr. Philibert, who following initial treatment, referred him to Dr. Walter H. Brent, Jr., an orthopedist, for evaluation and treatment. Plaintiff remained under the care of Dr. Brent from April 1962 until March 1964 during which time he submitted to four operations on his back by Dr. Brent:
1) A laminectomy for a disc condition in April 1962;
2) another partial laminectomy in June 1962;
3) a spinal fusion in January 1963;
4) a second spinal fusion in August 1963, to correct the first fusion.
In March 1964 plaintiff discharged Dr. Brent because he did not feel that Dr. Brent was doing him any good and because he was still having difficulty with his back. On advice of counsel plaintiff engaged the services of Dr. Byron Unkauf, another orthopedist.
Dr. Unkauf treated plaintiff until September 1964 but plaintiff still complained of constant pain. An examination of plaintiff conducted by Dr. Unkauf on September 14, 1964 revealed paravertebral spinal muscle spasm in the lumbar region and a limited range of movement accompanied by pain. It was Dr. Unkauf’s opinion that this was probably caused by Dr. Brent’s second spinal fusion being of insufficient strength at the upper end.
To remedy this Dr. Unkauf scheduled an operation for October 8, 1964 to do a revision of Dr. Brent’s second fusion.
In September 1964 plaintiff advised defendants that Dr. Unkauf proposed to do another refusion at the L4-5 interspace, the site of Dr. Brent’s last refusion, and called upon defendants for a letter of authority from the insurance company to the hospital to pay for the operation. The insurance company refused to pay for this proposed fifth operation unless plaintiff agreed to a re-examination by Dr. Brent before the operation was performed.
Plaintiff refused to be examined by Dr. Brent, his reason being: “I felt he had lost interest in the case. I would call him and he wouldn’t return phone calls; I would go to him and he wouldn’t examine me, he would just talk to me. I felt he was losing interest in the case and I felt I wasn’t getting a fair shake.” Plaintiff did not object to an examination per se, all that he objected to was an examination by Dr. Brent. The defendant insurer was notified that plaintiff would submit to an examination at any time and place by any doctor selected by the insurer except Dr. Brent. No other doctor was proposed by the insurance company.
Dr. Unkauf performed the fifth operation on October 8, 1964 as scheduled. The total cost thereof including the surgeon’s fee and the hospital bill amounted to $1,-750.24. Because of plaintiff’s refusal to submit to an examination, by Dr. Brent the defendant insurance company denied liability for any of the medical expenses incurred in the operation by Dr. Unkauf. This suit followed.
It should be noted here that the defendant compensation insurer has paid without interruption and is still paying workmen’s *902 compensation to plaintiff at the rate of $35.00 per week and that since the date of the accident it has paid medical expenses for plaintiff’s account in the sum of $7,-471.27 the excess of which sum over the statutory medical allowance of $2,500.00 having been paid by virtue of the “Additional Medical Coverage Endorsement” attached to and made part of the policy issued to plaintiff’s employer. By virtue of this endorsement the insurer agreed to pay monthly the reasonable cost (up to the sum of $10,000.00) of all medical services to an injured ’employee “ * * * which in the opinion of the company are reasonably necessary for the treatment of any bodily injury sustained * * * ” by an injured employee arising out and in the course and scope of his employment.
The sole question presented by this appeal is whether plaintiff’s refusal to be examined by Dr. Brent justified the refusal of the insurer to pay plaintiff’s claim.
The defendant insurer contends that it had a statutory as well as a contractual right to obtain an examination of plaintiff by a doctor of its choice prior to the operation by Dr. Unkauf and that plaintiff’s refusal to be examined by Dr. Brent was a breach of both the statute and the contract justifying its refusal to pay.
The “contractual right” asserted by the insurer refers to the provisions of the “Additional Medical Coverage Endorsement” which obligates it to pay for all medical expenses up to $10,000.00 “which in the opinion of the company are reasonably necessary for the treatment.” The insurer contends that in order to determine whether the proposed operation by Dr. Unkauf was “reasonably necessary” it had the right to have plaintiff examined by a doctor of its choice prior to the operation.
Paragraph numbered 16 of the “Conditions” of the policy provides that: “Terms of this policy which are in conflict with the provisions of the Workmen’s Compensation law are hereby amended to conform to such law.” Since the endorsement in question forms part of the policy the provisions of the compensation law are superimposed on it and the insurer’s rights under the endorsement are, in our opinion, the same but no greater than the rights accorded to it by the compensation statute.
The defendant insurer contends that under the provisions of the compensation statute particularly LSA-R.S. 23:1124 it had the right upon plaintiff’s refusal to be examined by Dr. Brent to refuse payment of the expense of Dr. Unkauf’s operation and that moreover plaintiff is without right to prosecute any claim therefor since the requested examination never took place.
LSA-R.S. 23:1124 reads as follows:
“If the employee refuses to submit himself to a medical examination as provided in this Sub-part or in anywise obstructs the same, his right to compensation and to take or prosecute any further proceedings under this Chapter shall be suspended until the examination takes place. When a right to compensation is suspended no compensation shall be payable in respect to the period of suspension.” (emphasis supplied.)
Plaintiff, on the other hand, contends that when an injured employee refuses to submit to a medical examination requested by the employer the employer’s remedy is to seek a court order for an examination under the provisions of LSA-R.S. 23:1123 which reads as follows :
“If there be any dispute thereafter as to the condition of the employee, the court, upon application of either party, shall order an examination of the employee to be made by a medical practitioner appointed by the court. The fees of such examiner shall be fixed by the court at not more than ten dollars, and shall be paid in advance by the applicant. The medical examiner shall report his conclusions from the examination to the court, and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.”
*903 Plaintiff further contends that since an employee may be justified in refusing to submit to a specific examination requested by his employer the penalties provided in LSA-R.S. 23:1124 may not be imposed until the reasonableness vel non of the employee’s refusal has been decided by the Court, and that penalties may not be imposed unless the employee refuses to submit to an examination ordered by the Court.
In Abshire v. Hartford Accident and Indemnity Company, La.App., 179 So.2d 508 (Third Circuit) the Court held that the failure of an employee to appear for an examination of which he had notice but which was arranged by the employer without consulting the employee as to time, date and place and who the physician should be, did not entitle the employer to suspend workmen’s compensation benefits. The Court said in part:
“ * * * The statutory authority, LSA-R.S. 23:1121, provides that the employee shall submit himself for medical examination ‘as often as may be reasonably necessary and at reasonable hours and places’, upon penalty of suspension of his compensation. The determination of the reasonable necessity of the examination * * * is not one that properly should be left to the unilateral suggestion of the employer, without any consultation whatsoever of the employee as to his availability and personal opposition to a given medical examination * * * This is especially so in view of the drastic penalty to the employee of being denied compensation if what he feels to be a justified refusal to submit to unreasonable medical examination, in the final event is not sustained by the courts.

“ * * * an employer should not be entitled to require an employee to submit to a specific medical examination simply upon his own ex parte determination that such is reasonable, upon penalty to the employee of loss of his compensation if he resists the employer’s request as unreasonable. A judicial determination, pursuant to contradictory proceeding, should * * * be necessary to justify an employer’s suspension of compensation payments because of an employee’s allegedly unreasonable refusal to submit to medical examination.”
In Green v. Liberty Mutual Insurance Company, La.App., 184 So.2d 801, the same Court, after holding that the penalty provisions of LSA-R.S. 23:1124 must be interpreted in the light of the other provisions of the compensation act pertaining to medical examinations (LSA-R.S. 23:-1121, 1122 and 1123), quoted at length from its holding in Abshire and said in part:
“Viewing the medical examination provisions of the statute as a whole, we think that an employer is entitled to have an allegedly injured employee examined initially and thereafter as reasonably necessary. However, the employer is not entitled to suspend compensation to a disabled employee for the employee’s failure to report for medical examination, except where such medical examination has previously been determined to be reasonable.
******
“In summary, in the present case the sole cause the employer terminated workmen’s compensation payments to the disabled employee was that employee failed to appear for a medical appointment fixed ex parte by the employer. As previously noted, termination for such cause of compensation payments to a disabled employee is not authorized by law * * * ”
The defendant insurer cites two cases in support of its contention: Lowe v. Arkansas & Louisiana Missouri Ry. Co., La.App., 5 So.2d 160, and Smith v. W. Horace Williams Company, Inc., La.App., 84 So.2d 223.
The Lowe case is clearly distinguishable from the instant case. In the Lowe case the employer brought a rule to show cause why the injured employee should not submit to a specific examination proposed by the employer. The Trial Court ordered *904 compensation benefits suspended unless plaintiff submitted to the requested examination. Plaintiff appealed from this ruling and the Appellate Court remanded the case for a determination of the reasonableness of the examination. In this case it is noted that the employer obtained a court order for the examination.
In the Smith case the Court refused plaintiff’s claim for certain additional medical expenses under an excess medical endorsement on the ground that the insurer knew nothing about the incurring of the additional expenses and therefore had no opportunity to determine whether they were reasonably necessary. None of the issues in the case before us were decided in the Smith case because they did not arise in that case.
In the instant case the defendant insurer was fully aware of plaintiff’s intention to have a fifth operation performed by Dr. Unkauf and that the operation would necessarily result in additional expenses. It had been furnished a copy of Dr. Unkauf’s report of September 21, 1964 scheduling an operation for October 7, 1964 and it was this report which caused the insurer to request plaintiff to submit to a re-examination by Dr. Brent.
Although the defendant insurer had ample time between plaintiff’s refusal to submit to another examination by Dr. Brent and the scheduled date of Dr. Unkauf’s operation within which to seek a Court determination as to whether plaintiff’s refusal to an examination by Dr. Brent was arbitrary or unreasonable, it did not choose to do so.
There was a dispute between the parties as to whether Dr. Brent’s last spinal fusion needed to be revised. Dr. Unkauf was of the opinion that a revision was necessary (as it turned out to be). Dr. Brent in a letter to the insurer dated March 30, 1964 had already expressed his opinion that no further surgery was necessary and that there was no evidence of non-union of his last fusion, although plaintiff still complained of pain.
We are of the opinion that the provisions of the compensation statute are superimposed upon the provisions of the “Additional Medical Coverage Endorsement” and that under the statute, as stated in Abshire, supra, an employer is .not entitled to require an employee to submit to a specific medical examination under penalty to the employee of loss of his compensation benefits if the employee resists the employer’s request as unreasonable. In such an event a Court determination as to whether the employee’s refusal, to submit to the examination is reasonable vel non is necessary to justify the imposition of the statutory penalties.
The defendant insurer did not seek a Court determination of this issue prior to Dr. Unkauf’s operation as it had a right to do, but now resists payment of the expense of such operation on the ground of plaintiff’s refusal to submit to its proposed examination. The question therefore to be decided is whether such refusal by plaintiff was arbitrary and unreasonable and therefore justification for the defendant insurer’s refusal to pay.
We agree with the holding of the Trial Court that plaintiff’s refusal to be examined by Dr. Brent was not arbitrary, capricious or unreasonable. Plaintiff had no objection to being examined by any other physician but he had already submitted to four operations on his back by Dr. Brent without any relief of his pain and had lost all confidence in him and had discharged him. Moreover Dr. Brent had already expressed an opinion that no further surgery was necessary and we seriously doubt that another examination by him would have in anywise changed that opinion.
The defendant insurer’s refusal to pay the medical expenses in question was not in our opinion arbitrary, capricious and without probable cause so as to warrant the *905 award to plaintiff .of statutory penalties and attorney’s fees.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by defendants-appellants.
Affirmed.