SAVOY, Judge.
This case is consolidated with suit No. 4316 on the docket of this court entitled “Marvin Humphries v. Southern Casualty Insurance Company” La.App., 284 So.2d 620, and separate decrees will be rendered.
These consolidated cases arise out of two accidents admittedly sustained by plaintiff, Marvin Humphries, while employed by Frank Doughty Timber Corporation, which was insured by defendant, Southern Casualty Insurance Company.
In his first’ suit, plaintiff alleges that he was disabled by virtue of an accident occurring on or about May 19, 1972, whereby he sustained a cervical strain and other injuries while installing a battery in a Caterpillar Tractor.
The second accident plaintiff sustained while working for the same employer occurred on July 10, 1972, when he was struck by a falling tree, causing him to sustain a traumatic injury to his neck and right arm.
On the unopposed motion of defendant, the two cases were consolidated for trial.
After the matter had been consolidated for trial, a pre-trial conference was conducted on March 20, 1973. At that time it *618 was stipulated between the parties that the sole issue in the two suits related to the nature and extent of plaintiff’s disability, if any, and more specifically, whether or not the plaintiff had recovered from his injuries on the date compensation benefits were terminated by the defendant.
In the pre-trial order, dated March 21, 1973, the cases were set down for trial on May 9, 1973, and the court ordered all depositions completed and filed in the record by the trial date.
The consolidated cases were tried on May 9, 1973, as scheduled. At the conclusion of trial, after argument of counsel, the court, for oral reasons dictated into the record, rejected plaintiff’s demands and entered judgment for defendant in both cases.
From the judgment of the trial court, plaintiff devolutively appealed to this court.
The record reveals that the plaintiff did sustain a cervical strain on May 27, 1972, while employed by his aforesaid employer. He was placed under the care of Dr. Billy C. Nesbett, a general practitioner of Jena, Louisiana, who discharged him from treatment on June 8, 1972, stating that plaintiff would be able to return to work on June 12, 1972. Defendant did not receive Dr. Nesbett’s report until June 23, 1972, however. The record shows that plaintiff was actually paid workmen’s compensation benefits by defendant at the rate of $49.00 per week for a total of three weeks, or $147.00, which would pay benefits through June 24, 1972.
The record is clear that plaintiff had gone back to work and had been working for some time, for the same employer, before the injury of July 10, 1972, which is the basis for the second suit filed herein. Counsel for plaintiff did not seriously contend in the trial court, nor does he here, that plaintiff suffered residual disability as a result of the accident of May 29, 1972. Further, there is no evidence in the record to indicate any disability as a result of the accident of May 27, 1972.
It is undisputed that plaintiff sustained an accident on July 10, 1972, when he was struck by a falling tree. The record further shows that he was again treated by Dr. Billy C. Nesbett, and plaintiff was paid twelve weeks’ compensation at the rate of $49.00 per week, which paid him through October 1, 1972. Compensation was terminated by defendant on the basis of a medical report from Dr. T. E. Banks, orthopedic specialist of Alexandria, Louisiana, who saw plaintiff on August 11, 1972, and again on September 6, 1972, evidently at the request of counsel for plaintiff. The report of Dr. Banks, dated September 7, 1972, and addressed to plaintiff’s counsel, stated in effect that he could not find any evidence of residual disability precluding plaintiff from returning to work. Defendant explains the overpayment of compensation past the date of Dr. Banks’ report on the basis that the report was not received in its office until some time after the date of said report.
Dr. Banks’ deposition was taken by defendant prior to trial and introduced into the record. Dr. Banks’ testimony was to the effect that plaintiff was able to return to work as of September 6, 1972, the date of his second examination. (A copy of Dr. Banks’ report, dated September 7, 1972, was sent to plaintiff’s attending physician, Dr. Nesbett). The X-rays revealed no bony pathology, and no objective evidence of disability, and after this examination of September 6, 1972, Dr. Banks was of the opinion that plaintiff could return to work without difficulty. It should be pointed out that in his deposition Dr. Banks stated that plaintiff did not complain of any accident occurring on May 27, 1972 (the first accident), and directed his complaints solely to the accident of July 10, 1972.
In his deposition, Dr. Banks testified on cross-examination by plaintiff’s counsel, as follows:
Q. Now assume that Mr. Humphries— not Mr. Humphries but a hypothetical person did attempt to work No *619 vember the 15th, and finally he decided just to completely retire, and just stopped working, altogether, and he had all the complaints that he had from the start, would you say this man was suffering from compensation neurosis ?
A. Whatever that is—
By Mr. Simon: I object to that—
A. I don’t know what that is, and have no desire to give an opinion on it because I’m not qualified to diagnose a neurosis or state an opinion regarding one.
By Mr. Sanders: That’s all I have.
The record reveals that on May 4, 1973 (five days before trial date), plaintiff’s counsel filed a motion to appoint an expert, alleging that the court should appoint an expert for the purpose of examining plaintiff. Attached to the motion was a purported report from a Dr. Neal R. Na-son of Jena, Louisiana, dated April 27, 1973, referring to plaintiff, which read:
He is in the hospital for an infection and bad back, and must stay here several days.
When the case came on for trial on May 9, 1973, plaintiff’s counsel renewed the motion to appoint an expert to examine plaintiff. The record reveals that when plaintiff’s counsel had first submitted the motion to the court on May 4, 1973, the court had informed plaintiff’s counsel that the court did not feel that the motion to appoint an expert should be granted ex parte, especially under the circumstances of the case. This ruling by the trial judge was correct. See Abshire v. Hartford Accident and Indemnity Company, 179 So.2d 508 (La.App. 3rd Cir. 1965), wherein the Court of Appeal set aside an ex parte order for examination of plaintiff obtained by defendant compensation insuror. The Abshire case was followed in Green v. Liberty Mutual Insurance Company, 184 So.2d 801 (La.App. 3rd Cir. 1966), and quoted with approval in Ripp v. Maryland Casualty Company, 221 So.2d 899 (La.App. 4th Cir. 1969). As these cases point out, a contradictory hearing is necessary to determine whether such an examination is “reasonably necessary.”
It appears that the basis for plaintiff’s counsel’s attempt to have an expert appointed by the court was the excerpt hereinabove quoted from Dr. Banks’ deposition, which plaintiff alleges seemed to indicate that psychiatric evaluation was indicated. The trial court did not believe that the tenor of the testimony of Dr. Banks indicated such an opinion by Dr. Banks, but merely that Dr. Banks did not want to get involved in the psychiatric field. The trial court pointed out that it appeared that there was no substantial dispute between the medical authorities involved in the case, and, as a matter of fact, the court was careful to point out that in this particular case the defendant was ready to go to trial on the basis of what plaintiff’s own doctors had said, and he did not feel the motion should be granted. Also, it was pointed out that the lawsuit had been pending for approximately a year, giving ample opportunity for further examinations of plaintiff if his counsel felt that they were reasonably necessary. The ruling of the trial court in this regard was within the scope of its discretion to determine whether or not the request for such an examination was “reasonably necessary.” See cases cited immediately above.
Insofar as the slip signed by Dr. Nason was concerned, the court ruled that the slip was not admissible in evidence under the hearsay rule. The court did allow it to be filed into the record as though made under the provisions of LSA-C.C.P. 1636. The ruling of the trial court was correct insofar as the admissibility of the slip was concerned, but even if it were to be considered, it would not materially alter the ultimate disposal of the issue presented in this matter.
While plaintiff’s counsel was arguing this motion in the trial court, he also *620 informed the trial court that he was moving for a continuance. One of the grounds for moving for such a continuance was the fact that the plaintiff had not appeared in court for the trial on that date. The court advised counsel that the lawsuit had been pending for quite some time, and in view Of the pre-trial conference and the order issued thereunder, and that everyone knew about the date of the trial and the issues presented, the court could not reasonably grant a continuance. The court further informed all counsel that the day prior to trial, the plaintiff himself had come to the trial judge’s office and had seen him at approximately 1:00 o’clock P.M. in the afternoon of May 8, 1973. The trial court at that .time informed plaintiff that he must be in court ready to try his case the following day. The court pointed out that it was obvious, of course, even considering the note signed by Dr. Nason, that the plaintiff had been discharged from the hospital and was ambulatory, and there was no reason he could not appear for the trial as scheduled, having ample notice thereof, and being firmly directed by the trial court so to do. Insofar as continuance is concerned, the trial court stated that there was no peremptory ground for continuance under LSA-C.C.P. 1602, and under the discretionary grounds provided in LSA-C.C.P. 1601, he did not feel a continuance should be granted. We are of the opinion that this ruling was within the wide discretion allowed the trial judge insofar as continuances are concerned. His ruling will not be disturbed on appeal in the absence of a clear showing of the abuse of that discretion. See Bank of Commerce v. Prejean, 262 So.2d 798 (La.App. 3rd Cir. 1972); Bryer Insurance Agency, Inc. v. Bruno, 261 La. 177, 259 So.2d 55 (1972).
The only medical testimony in the record is the deposition of Dr. T. E. Banks, and the testimony of a Mrs. Diana Fisher, the claims agent for defendant who handled the two accident claims for plaintiff. Further, there is the medical report mentioned above from Dr. Nesbett relative to the first injury of plaintiff. That is the entire record in the case.
It is, of course, quite unusual to have the trial of a workmen’s compensation case where the plaintiff does not testify, and we can appreciate the awkward position into which plaintiff’s counsel was put. However, as the trial court pointed out, this is not counsel’s own making, but was due entirely to the fault of plaintiff. The trial court considered thoroughly the points raised by plaintiff’s counsel relative to the appointment of an expert and the granting of a continuance, and felt that it should not, in its discretion, grant such motions. As has been heretofore pointed out, this is entirely within the discretion of the trial court, and there was no manifest error in the action of the trial court in denying both the motion to appoint an expert and the motion for a continuance. For these reasons, the judgment of the trial court must be affirmed, at appellant’s costs.
Affirmed.