496 So.2d 1141 (1986)
Michael KNIGHT
v.
GENERAL ACCIDENT INSURANCE COMPANY, et al.
No. CA-5150.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1986.
*1142 Gary R. West, Gertler and Gertler, New Orleans, for plaintiff-appellant.
Michael P. Mentz, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for defendants-appellees.
Before GULOTTA and WARD, JJ., and PRESTON H. HUFFT, J., Pro Tem.
WARD, Judge.
Michael Knight sued his former employer, Henry's Sheet Metal Works, Inc., and its worker's compensation insurer, General Accident Insurance Company, alleging that despite his permanent, total disability, they had terminated his compensation benefit payments and had refused to pay for diagnostic procedures recommended by his physician. Knight claimed the refusal to pay compensation and medical benefits was arbitrary and capricious, rendering the defendants liable for statutory penalties and attorney's fees.
It is undisputed that Knight was injured on June 18, 1982 in the scope of his employment as a roofer's helper when he fell from a second-story roof. Knight's immediately apparent injuries were lacerations and a fractured wrist which were treated at a hospital emergency room. Additionally, eleven days after the accident, Knight consulted Dr. John J. Watermeier for diagnosis and treatment of pain in his lower back, neck and right shoulder, wrist and knee. General Accident Insurance paid Knight compensation benefits as well as the expenses of Dr. Watermeier's treatment, including two surgeries on Knight's right knee. Knight received compensation benefits and medical expenses from the date of the accident until December 1982 when they were suspended for approximately a month, apparently as a result of a clerical error by the insurer. Benefits were again *1143 discontinued on July 26, 1984, and Knight filed suit on September 25, 1984. His benefit payments were reinstated on January 14, 1985 and continued until May 2, 1985 when they were finally terminated. Knight has not attempted to work since the accident.
After considering medical evidence and the testimony of Knight and that of a General Accident Insurance representative, the Trial Judge found the termination of compensation "on two occasions ... unjustified" and granted Knight statutory penalties and attorney fees totaling $2,353.62. The Judge then found that Knight was not disabled at the time of trial and that no further compensation was due.
Knight appeals, alleging the Trial Judge erred when he found that Knight was not disabled and when the Trial Judge refused to require General Accident Insurance to pay for further diagnostic procedures. Knight also contends the Trial Judge erred in admitting into evidence a physician's report prepared for Knight's attorney in another lawsuit. The defendants have answered the appeal, alleging error in the portion of the judgment which holds them liable for penalties and attorney fees.
We first consider the evidentiary issue. During trial, the defendants called Dr. Julius Levy who testified as a fact witness based upon his treatment of the plaintiff for neck and back pain following an automobile accident in August 1983. Knight's previous counsel (an associate of his present attorney) had engaged Dr. Levy as a medical expert in a tort case Knight filed for damages stemming from the automobile accident. Before responding to defendants' subpoena duces tecum requesting production of Michael Knight's medical record for trial of the present case, Dr. Levy removed from the record a medical report he had written for Knight's counsel in the tort case which contained his findings, diagnosis and history of treatment for Knight's cervical and lumbosacral strain. The Trial Judge admitted a copy of Dr. Levy's report into evidence over the objections of Knight's counsel that it was attorney work product.
We believe the report was properly admitted into evidence because Knight waived his evidentiary privilege. Article 1465 of the Code of Civil Procedure allows discovery of reports of physical examination, both court-ordered examinations and those made by agreement of the parties. Section B of Article 1465 provides:
By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition.
In the present litigation, Knight was examined twice by the defendants' physician, Dr. Claude Williams. Knight's counsel deposed Dr. Williams, and in so doing, waived any privilege Knight had in the tort action regarding Dr. Levy's testimony about his neck and back injuries. We, therefore, considered Dr. Levy's report, but did not find it determinative of any of the conclusions reached in this case.
We must next decide whether Michael Knight was, as he contends, disabled at the time of trial in June 1985. The Trial Judge found that he was not. Knight asserts that the evidence establishes "a consistent course of substantial injury and pain left untreated due to defendants' persistent refusal to provide necessary medical treatment." Knight argues, moreover, that he should be considered totally and permanently disabled under the odd lot doctrine because he is able to work only with substantial pain. Knight relies upon his own testimony and the medical records and testimony of Dr. Watermeier, who saw him some 40 times during his course of treatment. Defendants rely upon the medical opinion of Dr. Claude Williams who evaluated Knight at their request in July 1983 and June 1985.
*1144 The testimony of the two physicians is not in such complete contradiction as the arguments of the parties would indicate. We begin with the points upon which they agree. Both assign a slight (5 to 10 percent) disability to Knight's right knee. Both doctors believed Knight capable of returning to his occupation once his knee reached maximum medical improvement, although Dr. Watermeier withdrew his release for Knight to return to work when Knight's back pain persisted. Knight had complained to both doctors of pain in his back, but neither could find objective manifestations for the pain. Finally, both doctors believed further tests might aid in diagnosing Knight's back problem. Dr. Watermeier strongly recommended, and indeed had ordered, tests; Dr. Williams believed they would be marginally useful. The only fact in dispute is whether Knight has back pain which renders him disabled.
"[W]here pain is the linchpin to make out a prima facie case for a worker's classification in the odd lot category, the pain accompanying routine physical tasks and attempts to return to work must be substantial, serious, intense and/or severe." Culp v. Belden Corp., 432 So.2d 847, 850 (La.1983). Disability is a factual determination upon which we will reverse a trial court only upon finding manifest error.
On appellate review, the trial court's factual findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact which, upon the latter's reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless clearly wrong. The reviewing court should not disturb reasonable evaluations of credibility and reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable.
Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300 (La.1979).
The only significant factual dispute was whether Knight has back paina subjective medical condition. In resolving this dispute, credibility becomes an issue, and giving the Trial Judge due deference in this domain, we conclude that the evidence sustains his finding of no disability. And because Michael Knight has been found not disabled, the defendants are not obligated to pay either further compensation benefits or any medical expenses.[1]
We now consider the issues raised by the defendants in their appeal of the portion of the judgment which held them liable pursuant to La.R.S. 23:1201.2 for unjustified terminations of compensation benefits and awarded Knight penalties of $353.62 and an attorney fee in the amount of $2,000.00. The defendants discontinued Knight's benefits three times. The Trial Court judgment indicates that the penalties and attorney fees were amended for the suspensions of benefits which occurred in December 1982 and in July 1984.
The first suspension of Knight's benefits, in December 1982, was apparently the result of inadvertent error by the insurer. Knight's benefits were resumed on January 3, 1983, and all missed payments were made up. We do not believe such a brief, inadvertent suspension of benefits can be characterized as "arbitrary, capricious, or without probable cause" so as to justify the imposition of penalties and attorney fees under R.S. 23:1201.2. We therefore reverse this portion of the judgment.
Knight's benefits were again discontinued on July 26, 1984. The General Accident Insurance representative explained that this discontinuance followed Dr. Watermeier's notification that Knight *1145 had been released to return to "regular work activity" on April 16, 1984. Other reports Dr. Watermeier made about this same time show that Knight had persistent complaints of pain for which Dr. Watermeier recommended further tests. The termination of benefits, therefore, appears to have been made upon somewhat conflicting information from the treating physician. Nonetheless, we do not agree with the Trial Judge that the termination was "unjustified", and it certainly was not "arbitrary, capricious, or without probable cause"the sort of discontinuance of benefits which makes a compensation payor liable for penalties and attorney fees under R.S. 23:1201.2. An employer or insurer should be able to discontinue benefit payments, as in this case, upon the treating physician's recommendation that the injured worker return to regular work activity, with confidence that the termination will not be found arbitrary or capricious by a court of law. See, Raby v. East Baton Rouge Parish School Board, 289 So.2d 535, 539 (La. App. 1st Cir.), aff'd 292 So.2d 245 (La.1974); Thomas v. McInnis Brothers Construction, Inc., 401 So.2d 522 (2nd Cir.), writ denied 406 So.2d 608 (La.1981). In none of the cases cited by Knight's counsel was the termination of benefits based upon a treating physician's recommendation that the injured employee return to his previous employment. Accordingly, we reverse the Trial Court's ruling that the defendants are liable for penalties and attorney fees in connection with the termination of Michael Knight's compensation benefits on July 26, 1984.
Knight's compensation benefits were reinstated on January 14, 1985, following Dr. Watermeier's report of January 9th stating that earlier restrictions he had placed on Knight's ability to work still applied. Knight's reinstated benefits were reduced, however, based upon a five per cent, rather than total, disability rating. On May 2, 1985, defendants again terminated Knight's benefits due to his failure to attend a scheduled evaluation by their physician, Dr. Williams. We believe this termination of benefits was arbitrary, capricious, or without probable cause.
Knight refused to submit to the medical examination because he claimed that, due to the defendants' refusal to pay for tests recommended by Dr. Watermeier, examination by Dr. Williams was not "reasonably necessary" as required by R.S. 23:1121, the statute which governs medical examinations of injured employees by employers' physicians. The defendants prevailed on their motion to compel the physical examination, and Knight was examined by Dr. Williams on June 5, 1985, approximately two weeks before trial. In a deposition following that examination, Dr. Williams stated that, based on clinical findings, Knight appeared capable of returning to work as a roofer's helper with only a five per cent permanent partial disability to his right knee. Hence, defendants reasonably refused to pay Knight benefits after Dr. Williams' examination.
The issue now raised by Knight in his reply brief, however, is whether the defendants acted arbitrarily, capriciously or without probable cause in discontinuing Knight's benefits before Dr. Williams examined him.
R.S. 23:1124 provides:
If the employee refuses to submit himself to a medical examination as provided in this Sub-part or in anywise obstructs the same, his right to compensation ... shall be suspended until the examination takes place. When a right to compensation is suspended no compensation shall be payable in respect to the period of suspension.
Before benefits may be suspended under this provision, there must be a judicial determination that the examination requested by the employer is reasonable. Ripp v. Maryland Casualty Co., 221 So.2d 899 (La.App. 4th Cir.1969); Smith v. Northwestern National Insurance Co., 432 So.2d 1102 (La.App. 3d Cir.1983). Defendants discontinued Knight's compensation benefits before they received a judicial determination that their request for a physical examination was reasonable. Accordingly, *1146 we order defendants to pay Michael Knight compensation benefits for the period from May 2, 1985 to June 5, 1985, the date of Dr. Williams' examination, as well as the penalty and attorney's fees provided in R.S. 23:1201.2 for discontinuance of benefits without probable cause. We are unable to determine from the record the amount of compensation due; neither can we calculate the 12 per cent statutory penalty. We are able, however, to determine from the record before us Knight's attorney's fees in the amount of $500.00 for litigation of this issue in the Trial Court and on appeal.
As thus amended, we affirm the judgment of the Trial Court and remand solely for computation of the benefits and penalty due Michael Knight and entry of judgment in the amount computed. All costs of appeal to be paid by the parties jointly.
AMENDED, AFFIRMED, AND REMANDED.
NOTES
[1] At trial, the General Accident Insurance Company representative testified that his company would authorize a brain CAT scan and other tests recommended by their physician in a final attempt to diagnose Michael Knight's back complaints. Our holding does not affect this promised authorization.