Douglas R. HAYDEN, Appellant,

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee.**

**Civ. No. 890115.**

Supreme Court of North Dakota.

Oct. 24, 1989.

Evans & Moench, Bismarck, for appellant; argued by Kenneth S. Rau.

Hugh Patrick Seaworth, argued, Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellee.

ERICKSTAD, Chief Justice.

Douglas R. Hayden appeals from a judgment of the District Court for McKenzie County dated February 14, 1989, affirming the North Dakota Workers Compensation Bureau's order dated August 29, 1988, which affirmed the Bureau's previous order denying Hayden further disability benefits. The district court also affirmed the Bureau's order of August 29, 1988, directing Hayden to "reimburse the bureau in the amount of $600.00 for benefits paid for such period that the claimant received temporary total disability benefits while he was working." We affirm.

On January 1, 1985, Hayden was injured in a work-related accident while employed by Noble Drilling Corporation as a motorman on a drilling rig. Hayden's injury occurred when his right wrist and arm got caught between a stand of collars and tong handle while working on a rig in McKenzie County. Hayden has complained of pain and swelling in his right arm since the time of the injury. The Bureau accepted liability for Hayden's injuries and awarded benefits, including temporary total disability benefits from the date of injury, January 1, 1985, through April 30, 1985, and from November 13, 1985, through April 21, 1987.

On May 22, 1987, the Bureau issued an order denying Hayden any further disability benefits. Upon Hayden's request, a formal hearing was held on June 22, 1988. Subsequent thereto, the Bureau issued an order, dated August 29, 1988, affirming its prior decision to terminate Hayden's benefits. In this order, the Bureau made the following relevant findings of fact and conclusions of law:

"FINDINGS OF FACT

· * * * * * ·

"III.

"Claimant sustained a compensable injury to his right arm in the course of his employment as a motorman.

\* \* \* \* \* \*

"VI.

"In or about September of 1986, claimant was employed on a full time basis driving a beet truck. Claimant's employment terminated when the work ended, and not because claimant was prevented from performing his duties due to his work injury. Claimant received compensation amounting to approximately $600.00 for this work. Claimant did not report this employment or the income received to the Bureau. Claimant was receiving temporary total disability benefits during this period. The Bureau finds that claimant had returned to work and accepted total disability benefits paid for a period after he had returned to work.

\* \* \* \* \* \*

"XI.

"There is substantial evidence that claimant's injury does not prevent him from retaining full time employment. Claimant has worked as a bartender for at least 30 to 32 hours per week for a substantial period of time, in addition to full-time, temporary jobs driving a truck or as a farm worker. The bureau finds that the greater weight of the evidence indicates claimant is capable of full-time employment in strenuous, physical labor.

\* \* \* \* \* \*

"XIII.

"The bureau finds ... that claimant is capable of returning to his former employment and other substantial gainful employment without restrictions.

\* \* \* \* \* \*

"CONCLUSIONS OF LAW

"I.

"Claimant sustained an injury by accident arising out of and in the course of his employment on January 1, 1985.

"II.

"Claimant has violated N.D.C.C. § 65–05–33 because he accepted total disability benefits paid for a period after the claimant returned to work.

"III.

"Claimant is required to reimburse the bureau for any benefits paid for such period after claimant returned to work when he was not totally disabled; and, in addition, claimant shall forfeit any additional benefits relative to his injury.

"IV.

"Claimant has failed to prove that he continues to be disabled as a result of the work injury dated January 1, 1985.

"V.

"Claimant has failed to prove that he is entitled to further benefits under the North Dakota Workmen's Compensation Act."

Hayden appealed from the order of the Bureau to the District Court for McKenzie County which affirmed the Bureau's order. Hayden then appealed to this Court.

The issues we will consider on appeal are as follows:

I.

Does this Court lack jurisdiction to hear Hayden's appeal?

II.

Does the Workers Compensation Bureau have the authority to find Hayden in violation of section 65–05–33, N.D.C.C.?

III.

Did Hayden "return to work" as contemplated by section 65–05–33, N.D.C.C.?

IV.

Has Hayden met his burden of proving his continued disability?

Pursuant to section 28–32–19, N.D.C.C., we must affirm the Bureau's decision un-

less its findings of fact are not supported by a preponderance of the evidence or its conclusions are not supported by its findings of fact. *Froysland v. N.D. Workers Comp. Bureau*, 432 N.W.2d 883, 887 (N.D. 1988); *Claim of Olson*, 419 N.W.2d 894, 896 (N.D.1988). In determining whether or not an agency's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the agency, but we determine only whether or not a reasoning mind could reasonably have determined that the factual conclusions were supported by the weight of the evidence. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979).

I.

Does this Court lack jurisdiction to hear Hayden's appeal?

 We will first consider the Bureau's contention that the district court had no jurisdiction in the appeal from the Workers Compensation Bureau's order. Hayden originally filed the appeal from the Bureau's order to the District Court in and for Williams County. The Bureau filed a motion to dismiss the appeal on the grounds that the District Court for Williams County lacked jurisdiction to entertain it because of improper venue. Section 65–10–01, N.D. C.C., provides that appeals from a decision of the Bureau must be made "to the district court of the county wherein the injury was inflicted or of the county in which the claimant resides." At the time of the injury, Hayden was a resident of Montana. Therefore, the order should have been appealed to the District Court for McKenzie County, the place of the injury. *See* section 28–32–15, N.D.C.C.[1]

Hayden then filed motions with the District Court for Williams County to change the venue of the appeal from Williams to McKenzie County, pursuant to section 27–05–26, N.D.C.C.;[2] to ask leave of court to amend the service and pleadings as allowed by Rule 4(g) of the North Dakota Rules of Civil Procedure to reflect McKenzie County as the venue; and to enlarge the time for serving and filing of the Notice of Appeal to allow Hayden to serve and file a new Notice of Appeal listing McKenzie County as place of trial, pursuant to Rule 6(b) of the North Dakota Rules of Civil Procedure.

In an order dated November 4, 1988, Judge William M. Beede, sitting as judge of the District Court for Williams County, denied the Bureau's motion to dismiss the appeal. Judge Beede granted the motions filed by Hayden, allowing the venue of the appeal to be changed to McKenzie County. On February 14, 1989, Judge Beede, sitting as judge of the District Court for McKenzie County, affirmed the August 29, 1988, order of the Workers Compensation Bureau. Hayden then appealed to this Court.

In its brief, the Bureau raised the issue of whether or not the district court and ultimately this Court have jurisdiction to hear the appeal. Subject matter jurisdiction issues may be raised at any stage of the proceedings, even by this Court, on its own motion. *See Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) (party does not waive challenge to subject matter jurisdiction by failing to raise issue early in proceedings and court may raise issue at any time); *see also Reliable, Inc. v. Stutsman County Com'n*, 409 N.W.2d 632, 634 (N.D.1987) (subject

1. The pertinent part of section 28–32–15, N.D. C.C., provides:

 "*Appeal from determination of agency— Time to appeal—How appeal taken.* Any party to any proceeding heard by an administrative agency, except in cases where the decision of the administrative agency is declared final by any other statute, may appeal from such decision within thirty days after notice thereof has been given, or if a rehearing has been requested as provided herein and denied, within thirty days after notice of such

denial has been mailed to him. *Such appeal may be taken to the district court designated by law, and if none is designated, then to the district court of the county wherein the hearing or a part thereof was held....*" [Emphasis added.]

2. Section 27–05–26, N.D.C.C., reads:

 "*Change of venue.*— A change of venue may be taken from one judge to another in the same district or in another district, or from one county to another, or from one district to another in the manner provided by law."

matter jurisdiction cannot be conferred by agreement, consent, or waiver); N.D.R. Civ.P. 12(h)(3).

It appears that the issue is particularly hyper-technical in this case as, on an appeal from the decision of a district court in a Workers Compensation case, this Court reviews the findings of fact, conclusions of law, order for judgment and judgment of the Bureau rather than the findings, conclusions of law, order for judgment and judgment of the district court. *Jimison v. North Dakota Workmen's Comp. Bur.,* 331 N.W.2d 822, 824 (N.D.1983). There is no contention that the Workers Compensation Bureau did not have jurisdiction in that case. Nonetheless, we will consider the issue at this time.

The Bureau contends that neither the District Court for Williams County nor the District Court for McKenzie County obtained subject matter jurisdiction for the appeal because the appeal was not taken to the district court specified by statute. The Bureau relies on *Boyko v. N.D. Workmen's Comp. Bureau,* 409 N.W.2d 638 (N.D. 1987), for this proposition. In *Boyko,* the claimant was injured in 1981 in Golden Valley or McKenzie County, while residing in Stark County. Boyko later filed a claim with the Bureau based on a subsequent injury in 1983 in Ramsey County while residing in Ward County. The Workers Compensation Bureau issued an order denying further benefits for the 1981 injury and dismissing Boyko's claim for the 1983 injury. Boyko appealed the Bureau's order to the District Court for Burleigh County. The district court granted the Bureau's motion to dismiss the appeal because the appeal was not taken in the proper court. Boyko appealed to this Court, claiming that as there was no evidence in the record and no factual findings by the Bureau to indicate where the injuries occurred, he properly appealed to the District Court for Burleigh County under section 28–32–15, N.D. C.C. That section provides for appeals from final decisions of administrative agencies, and states that such appeals "may be taken to the district court designated by law, and if none is designated, then to the

district court of the county wherein the hearing or a part thereof was held."

In affirming the dismissal of Boyko's appeal relying on section 65–10–01, N.D. C.C., we said:

"Although it may be unclear where Boyko's injuries occurred, it is beyond dispute that they did not occur within Burleigh County. It is equally beyond dispute that Boyko does not reside in Burleigh County. Thus, pursuant to Section 65–10–01, the district court of Burleigh County does not have jurisdiction over Boyko's appeal. Therefore, we affirm the judgment of the district court dismissing Boyko's appeal. [Footnotes omitted.]"

*Boyko, supra* at 641. There was no motion for a transfer of jurisdiction by the district court in *Boyko,* and thus that issue was not addressed.

The Bureau contends that the District Court for Williams County could not transfer the case to the District Court for McKenzie County because district courts do not have the authority to transfer a case to the proper venue if an appeal is improperly venued. The Bureau cites section 27–02–05.1, N.D.C.C., as authority for the proposition that the authority to transfer venue is vested only in this Court. Section 27–02–05.1, N.D.C.C., in relevant part reads:

"The supreme court shall provide to the extent it deems necessary or desirable, rules for:

\* \* \* \* \* \*

"5. The transfer of any matter to any proper court when the jurisdiction of any court has been improvidently invoked."

While the statute authorizes this Court to transfer any matter to any proper court when the jurisdiction of any court has been improvidently invoked, the statute does not say that such power is within the exclusive authority of this Court. In fact, the language is "to the extent it deems necessary or desirable...." Thus, this Court may allow such a transfer invoked by another court, if it is deemed proper.

Hayden contends that Judge Beede's actions were proper under section 27–05–26, N.D.C.C., and North Dakota Rules of Civil Procedure 4(g) and 6(b). Hayden contends that the Workers Compensation Act is to be construed liberally in favor of an injured worker, *citing Kroeplin v. N.D. Workmen's Comp. Bureau*, 415 N.W.2d 807 (N.D.1987). Arguing that his case will be lost forever if it is dismissed on jurisdictional grounds, and the lack of any prejudice to the Bureau by the filing of the appeal in Williams County, Hayden contends that it could not have been the intent of the legislature to force the harsh consequences of dismissal which the Bureau seeks. We agree and find that Judge Beede properly changed the venue of the appeal. Section 28–04–07, N.D.C.C., provides in part:

"*Court may change venue—Cases.—* The court may change the place of trial in the following cases:

"1. When the county designated for that purpose in the complaint is not the proper county;

\* \* \* \* \* \* .

"3. When the convenience of witnesses and the ends of justice would be promoted by the change;"

The "court" referred to in section 28–04–07, N.D.C.C., is the trial court. Notwithstanding the fact that the district court is acting in its appellate capacity on an appeal from an administrative agency, we believe that section 28–04–07, N.D.C.C., applies. The "ends of justice" are promoted by such a change.

Justice Levine, in her dissent, in effect asserts that section 28–04–07, N.D.C.C., does not apply and that the District Court for Williams County lacked jurisdiction to transfer the appeal to the District Court for McKenzie County. Justice Levine relies on *Boyko v. N.D. Workmen's Comp. Bureau*, 409 N.W.2d 638 (N.D.1987), *Prosper Enegry Corp. v. Indus. Com'n of N.D.*, 359 N.W.2d 860 (N.D.1984); *Happy Day Day Care Ctr. v. Social Service Bd.*, 313 N.W.2d 768 (N.D.1981); *City of Casselton v. N.D. Public Serv. Com'n*, 307 N.W.2d 849 (N.D.1981); and *Wagner v.*

*North Dakota Board of Barber Exam.*, 186 N.W.2d 570 (N.D.1971). In those cases this Court, for the most part, affirmed district court dismissals of appeals when notices of appeal from administrative agencies had been filed in the wrong county. In one case, *i.e., Wagner,* this Court reversed the district court after finding the district court to be without jurisdiction. We have reviewed those cases and find them not to be controlling. They are distinguishable in that, in the case at hand, a motion was made for a change of venue, the district court considered that motion, and granted the change of venue to the district court of the proper county, whereas no such motion was made, considered, or granted in any of the cases relied on by Justice Levine. In our view, section 28–04–07, N.D.C.C., applies for the reasons earlier stated herein.

## II.

Does the Workers Compensation Bureau have the authority to find Hayden in violation of section 65–05–33, N.D.C.C.?

Section 65–05–33, N.D.C.C., as applicable to Hayden in 1986 and 1987, reads as follows:

"*Filing false claim or false statements —Penalty.* Any claimant who files a false claim or makes a false statement in connection with any claim or accepts total disability benefits paid for a period after the claimant has returned to work is guilty of a class B misdemeanor. In addition to any other penalties provided by law, the claimant shall reimburse the bureau for any benefits paid based upon such false claim or false statement or for such period that the claimant was not totally disabled; and, in addition, shall forfeit any additional benefits relative to that same injury."

Section 65–05–33, N.D.C.C. (1981).

While the statute makes its violation a misdemeanor, it also provides for administrative sanctions. The statute does not say that the additional administrative sanctions may be invoked only following a criminal conviction. In fact, whether or not Hayden is ever actually prosecuted or

convicted under section 65–05–33, N.D.C.C., is irrelevant to a determination of whether or not he is subject to administrative sanctions. The standard of proof required in administrative proceedings is preponderance of the evidence, which is lower than the proof beyond a reasonable doubt standard of a criminal proceeding. Section 65–01–11, N.D.C.C. The Workers Compensation Bureau has the authority to promulgate and enforce reasonable rules and regulations for implementing and administering the provisions of our Workers Compensation laws. Section 65–02–08, N.D.C.C.; *Moore v. North Dakota Workmen's Comp. Bureau,* 374 N.W.2d 71 (N.D.1985). Thus, the Workers Compensation Bureau has the authority to impose the administrative sanctions of section 65–05–33, N.D.C.C., upon its finding of a violation of such statute.

### III.

Did Hayden "return to work" as contemplated by section 65–05–33, N.D.C.C.?

■ The Bureau concluded that Hayden violated section 65–05–33, N.D.C.C., "because he accepted total disability benefits paid for a period after the claimant returned to work." The Bureau further concluded that "[c]laimant is required to reimburse the bureau for any benefits paid for such period after claimant returned to work when he was not totally disabled." Hayden contends that because the work he engaged in was only temporary, he did not "return to work" within the meaning of the statute. Hayden also contends that the nature of the work he has done and the fact that he has suffered pain while attempting such work places him in the odd-lot category, and, therefore, he could not have violated section 65–05–33, N.D.C.C. The "odd-lot" doctrine does not apply to the determination of whether or not there has been a violation of section 65–05–33, N.D.C.C., as the doctrine is used to determine whether or not a claimant is entitled to benefits due to the nature of the disability, not whether one has "returned to work." Under the "odd-lot" doctrine, which we have never expressly adopted, disability

may be found in the case of a worker, who, while not totally incapacitated for work, is so limited that he will not be employed on a regular basis in any well-known branch of the labor market. The rule followed by most courts has this application:

> "An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled."

2 Larson, The Law of Workmen's Compensation, § 57.51(a) (1989), citing *Lee v. Minneapolis St. Ry.,* 230 Minn. 315, 41 N.W.2d 433, 436 (1950). A distinguishing characteristic of odd-lot employment is that of irregularity and unpredictability of the work. The motive behind the rule in some instances is to encourage, or at least not to penalize, commendable efforts by the claimant to find some type of work. Larson, *supra* § 57.51(f). Thus, a claimant may be considered disabled and entitled to benefits, even though he has "worked" or is "working" at employment which falls within the odd-lot category. This discussion of the application of the "odd-lot" doctrine in other states, however, may be irrelevant as we are governed by our statutes and particularly section 65–05–33, N.D.C.C.

Since his injury, Hayden has completed his GED, has completed an Emergency Medical Technician course and has been certified as an Emergency Medical Technician. Hayden drove a beet truck for a farmer during the harvest season in September 1986 and again in September 1987. Hayden was also employed as a surveyor in the spring of 1987, and in his parents' bar off and on in 1986 and 1987. Hayden was paid $600.00 for driving the truck in September 1986. Hayden testified at his hearing that he was also compensated for the work in his parents' bar. During these times of employment, Hayden was receiving temporary total disability benefits, and did not report any of his employment income to the Bureau.

The relevant part of section 65–05–33, N.D.C.C., reads as follows: "Any claimant

who ... accepts total disability benefits paid *for a period after the claimant has returned to work* is guilty of a class B misdemeanor." [Emphasis added.] The Bureau contends that the "odd-lot" doctrine does not apply to section 65–05–33, N.D.C.C., because the language of the statute is clear: anyone accepting benefits after having returned to work has violated the statute.

■ In construing statutory provisions, we are guided by several well-settled rules of statutory construction. The primary objective of statutory construction is to ascertain the legislative intent. *County of Stutsman v. State Historical Soc.*, 371 N.W.2d 321 (N.D.1985). The legislature's intent in enacting a statute must first be sought from the language of the statute itself. *Puklich & Swift, P.C. v. State Tax Com'r*, 359 N.W.2d 846, 849 (N.D.1984). Where the legislative intent is apparent from the face of the statute, there is no room for construction and the Court will follow the rule of literal interpretation in applying the words of the statute. *Peterson v. Heitkamp*, 442 N.W.2d 219, 221 (N.D.1989), *citing Coldwell Banker v. Meide & Son, Inc.*, 422 N.W.2d 375, 379 (N.D.1988).

■ The language of section 65–05–33, N.D.C.C., does not . differentiate between permanent and temporary employment. When a statute is unambiguous, it is improper for the Court to attempt to construe the provisions so as to legislate that which the words of the statute do not themselves provide. *Peterson, supra; Haider v. Montgomery*, 423 N.W.2d 494, 495 (N.D. 1988). Section 65–05–33, N.D.C.C., was enacted in 1981. The legislative history indicates the intent was to create a penalty for anyone who "accepts disability benefits for a period during which that person is actually working." Minutes of the House Committee on Industry, Business, and Labor, March 2, 1981, Testimony on S.B. 2127, Drafter's Notes at p. 1. Hayden did accept disability benefits for a period during which he was actually working. Therefore, we conclude that a reasoning mind could have reasonably concluded that Hayden did violate section 65–05–33, N.D.C.C., and that the Bureau properly invoked the administrative sanctions of that section.

IV.

Has Hayden met his burden of proving his continued disability?

■ The Workers Compensation Bureau concluded that Hayden "has failed to prove that he continues to be disabled as a result of the work injury dated January 1, 1985." This conclusion was based on the Bureau's assessment of the medical evidence. Hayden contends that the finding that he is not disabled and is capable of returning to his former employment and other substantial gainful employment without restrictions is "clearly erroneous." We assume that Hayden means that the finding is not supported by a preponderance of the evidence, as that is the standard of review on appeal from the determinations of an administrative agency. Section 28–32–19, N.D.C.C.; *Claim of Olson*, 419 N.W.2d 894.

■ A claimant has the burden of establishing the right to participate in benefits from the Workers Compensation fund. Section 65–01–11, N.D.C.C.; *Inglis v. North Dakota Workmen's Comp. Bureau*, 312 N.W.2d 318 (N.D.1981). If the Bureau terminates benefits after initially accepting a claim and paying benefits, the claimant has the burden of proving his or her right to continue receiving benefits. *See Gramling v. North Dakota Workmen's Comp. Bur.*, 303 N.W.2d 323 (N.D.1981). In *Gramling*, the claimant was awarded disability benefits due to a back injury in the course of his employment with Clark Equipment, Melroe Division, in Bismarck, North Dakota. The Bureau terminated all benefits to Gramling approximately two years after his injury, concluding that "he had failed to prove he remained disabled from his job-related injury." *Gramling, supra* at 325. Gramling contended that the burden was on the Bureau to prove he was a malingerer. To the contrary we said: "[t]he Bureau does not have a burden of proving that the claimant is not entitled to benefits. Rather, the burden is upon the

claimant to prove that he is entitled to benefits." *Gramling, supra* at 329.

 Hayden also contends that the Bureau failed to clarify inconsistent medical evidence and "scanned the medical record only for favorable evidence to cite in its findings." When reviewing the evidence in a Workers Compensation case, this Court will consider only the record which was before the Bureau, the transcript of the formal hearing, and any evidence presented at the hearing. Section 28-32-19, N.D.C.C. There is much medical evidence to assess in this case as Hayden has seen a number of doctors and therapists over the last four years. X-rays of Hayden's right wrist, taken on January 2, 1985, showed a deformity of the right fifth metacarpal suggestive of a prior fracture. Hayden was said to have sustained an extension injury to the right wrist and contusion of the left hand. Hayden consulted with a Dr. Frankel for a time until Dr. Frankel transferred out of the area. Hayden then saw his family physician, Dr. R.E. Wiederanders of Williston, North Dakota, who referred Hayden to Dr. Frank H. Ise of Williston, North Dakota.

On February 4, 1985, Dr. Ise said: "I could not come up with a whole lot on physical examination or x-ray. He does, however, have a little bit of numbness in the entire left hand to deep pin prick." On April 8, 1985, Dr. Ise noted that "the only reason to keep this man off work is because of his complaints of pain." Dr. Ise went on to state that according to his examinations, there was nothing objective to substantiate these complaints. Dr. Ise also opined that Hayden should be given the benefit of the doubt, but that Hayden should be able to go back to work on or about the first of May 1985.

On November 13, 1985, Hayden consulted Dr. Lotfi Ben-Youssef who reported a weakness of the right grip and thumb. Dr. Ben-Youssef pointed out that there was no limitation of the range of motion of the right forearm or wrist, but that Hayden was totally disabled from employment at that time. Dr. Ben-Youssef concluded that Hayden had an unimproved crush injury to the right upper extremity and referred Hayden to Dr. S. Arthur Frankel.

On November 26, 1985, Dr. Frankel noted that Hayden reported to him recurrent pain in his right forearm and hand. Dr. Frankel indicated on examination that Hayden had normal range of motion of both shoulders, elbows, and wrists. Dr. Frankel also observed that on the right side, Hayden's ulnar nerve was markedly irritable and he was able to reproduce forearm pain by compression of the nerve. Dr. Frankel then referred Hayden for further electrophysiologic testing. Dr. Gary Ray did an upper extremity nerve conduction study on November 27, 1985. The findings were said to be within normal limits on both the left and right sides. On January 16, 1986, Dr. Frankel indicated that evidence of the irritable ulnar nerve found in November 1985 was no longer present. Dr. Frankel concluded that it would be highly desirable for Hayden to look for some type of gainful employment and to increase activities. On February 12, 1986, Dr. Ben-Youssef reported that Hayden could return to an activity excluding heavy manual labor with the right upper extremity, and that Hayden would highly benefit from schooling or retraining.

Hayden was scheduled for an assessment at MedCenter One in Bismarck, North Dakota, for March 1986. Hayden did not appear at the original appointment date, but did appear on the rescheduled date of May 11, 1986. Dr. R.O. Saxvik, of the MedCenter One team, indicated that Hayden had good muscle strength, that his right-left hand strength comparisons were within normal range, and that he had no muscle atrophy. Dr. Saxvik did acknowledge that Hayden had soreness on the lateral posterior aspect of his right elbow and that his final diagnosis was said to be post-traumatic injury right elbow with residual epicondylitis or myofascitis of the anconeus muscle. Dr. Saxvik recommended that Hayden reenter the work force on a light to moderate level. Dr. Saxvik also noted that a "[r]ehabilitation program should allow him to return to full employment in two to three months."

On May 13, 1986, Dr. Donald Larson, a Neurologist, indicated that there was no atrophy to the arms, the sensation was intact, and that strength was adequate. Dr. Larson observed that Hayden had an area of soreness on the lateral posterior aspect of the elbow, but found no evidence of neuropathy or neurologic involvement. Dr. G. Flannery, an Orthopedist, noted that the upper extremities were normal appearing, there was a full range of motion, and that x-rays showed no significant abnormality. Dr. Flannery observed that Hayden did have a point of tenderness in his elbow. His impression of the injury was of a "tennis elbow" type injury.

Hayden saw Mike Neff, a registered physical therapist, on May 15, 1986. The therapist noted that Hayden had a lateral epicondylitis of some sort. It was suggested that Hayden could benefit from a variety of physical therapy treatments. Physical examination by the therapist indicated that Hayden had excellent strength in his hands. The therapist also reported that "[h]e did not appear to be in any discomfort during any of the test although he stated that his elbow did hurt and it seemed that the pain produced in palpation is unproportional with the pain he states he is having."

Hayden was subsequently evaluated by the Director of the Sister Kenny Institute's Chronic Pain Rehabilitation Program, Dr. Mathew Monsein, on April 7, 1987. Dr. Monsein concluded that the entire physical examination was within normal limits. Dr. Monsein recommended that Hayden return to work full time without restrictions.

■ The Bureau's finding that Hayden is not disabled and is capable of returning to substantial gainful employment without restrictions is based on the Bureau's assessment of the medical evidence. In assessing such medical evidence, the Bureau needs to make reasonable efforts to clarify discrepancies arising out of inconsistent medical reports. This clarification includes situations where the conflicting medical evidence is from different physicians. *See Claim of Bromley*, 304 N.W.2d 412 (N.D. 1981). Notwithstanding this expansion, we must keep in mind the basic rule which was stated in *Bromley* by Justice Sand who first enunciated our medical evidence discrepancy rule: "Normally, it is within the province of the administrative agency, not the courts, to weigh conflicting medical opinions and to resolve these conflicts. *Hassler v. Weinberger*, 502 F.2d 172 (7th Cir.1974)." *Howes v. Workers Compensation Bureau*, 429 N.W.2d 730, 734 (N.D. 1988), *citing Bromley, supra* at 417. We believe the Bureau's conclusions are supported by a preponderance of the evidence and that the Bureau has adequately addressed conflicting evidence. Reviewing the medical evidence, along with the evidence of Hayden's activities since the time of the injury, we believe a reasoning mind could have reasonably concluded that Hayden is no longer disabled and is capable of returning to substantial gainful employment.

■ Hayden asserts in effect that the application of the "odd-lot" doctrine to his case would result in a finding that he is disabled. We have not adopted the "odd-lot" doctrine in our state, but assuming for discussion purposes that we had done so, it would be of no help to him as he has failed to establish a *prima facie* case that he is in the odd-lot category. It has been suggested that:

"If the evidence of degree of obvious physical impairment, coupled with other facts such as claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant." 2 Larson, The Law of Workmen's Compensation § 57.61(c) (1989).

Hayden has clearly not established obvious physical impairment at this time.

One of the elements contributing to a finding of disability in the odd-lot cases may be the fact that, while the claimant may have done some work after the injury, he suffered considerable pain while doing so. Larson, *supra* § 57.51(g). Where a claimant relies on pain to establish an odd-lot classification, the pain accompanying

the attempted return to work must be "substantial, serious, intense and/or severe." *Knight v. General Acc. Ins. Co.*, 496 So.2d 1141, 1144 (La.App. 4 Cir.1986). In *Knight*, the claimant was injured in the scope of his employment as a roofer's helper when he fell from a second-story roof. His employer's insurance company paid compensation benefits for three years and then terminated the benefits. Knight claimed that he was totally and permanently disabled under the "odd-lot" doctrine because he was able to work only with substantial pain. Knight had complained of back pain to two doctors, but neither could find objective manifestations for the pain. Stating the degree of pain necessary for an odd-lot classification, the Louisiana appellate court concluded: "In resolving this dispute, credibility becomes an issue, and giving the Trial Judge due deference in this domain, we conclude that the evidence sustains his finding of no disability." *Id.* Were we to apply the "odd-lot" doctrine in our state the deference would be due the Bureau's findings not the trial court's findings. We are not convinced that Hayden established a *prima facie* case of fitting into the odd-lot category.

The record does not warrant reversal of the Bureau's denial of further disability benefits, nor of its finding of a violation of section 65–05–33, N.D.C.C. Accordingly, we affirm the judgment of the district court upholding the denial of benefits by the Bureau and ordering Hayden to reimburse the Bureau for any benefits paid to Hayden after he had returned to work.

MESCHKE, J., concurs.

MESCHKE, Justice, concurring.

In view of the separate opinions of Justice VandeWalle and Justice Levine, I add several thoughts.

"Jurisdiction" is a word with a wide spectrum of meanings. Black's Law Dictionary 766 (5th ed. 1979) begins a lengthy definition by saying, "[t]he word is a term of large and comprehensive import, and embraces every kind of judicial action." Therefore, observations that an appeal from administrative agency is a matter of appellate jurisdiction only begin the analysis and do not complete it. I believe a court has inherent power to transfer an administrative appeal to the right chamber of the district court authorized to review it.

"When the court has jurisdiction, it has power to decide the case brought before it, even though the court having venue is one sitting in another circuit."

2 Am.Jur.2d *Administrative Law* § 731 (1962). *See Id.*, §§ 707, 732, and 737. *See also Industrial Addition Association v. Commissioner of Internal Revenue*, 323 U.S. 310, 65 S.Ct. 289, 89 L.Ed. 260 (1945).

This court has often expressed its preference for disposing of cases on their merits, rather than on technical or procedural grounds. That rule of interpretation is fairly applied here.

VANDE WALLE, Justice, concurring specially.

I concur with parts II, III, and IV of the majority opinion which discuss the merits of the appeal. If jurisdiction were a matter of equity I would also concur in part I of the opinion.

Here, the Bureau, apparently for its own convenience, scheduled the hearing in Williams County. If Section 65–10–01, N.D.C.C., did not specify that the appeal be taken to the district court of the county in which the injury occurred or the county in which the claimant resides, the district court of Williams County, the place where the hearing was held, would have jurisdiction to hear the appeal pursuant to Section 28–32–15. It is possible the claimant was misled as a result of the Bureau's holding the hearing in Williams County although, if read, the statutes are not difficult to follow.[1]

---

1. Prior to 1979, when Section 65–10–01, N.D.C.C., was amended by 1979 N.D.Laws Ch. 107, § 11, Section 65–10–01 permitted an appeal to the district court of the county wherein the injury was inflicted "or of a county agreed to by stipulation of the appellant and the bureau." See 1967 N.D.Laws Ch. 488, § 1. The 1979 Legislature amended several sections involving appeals from various administrative agencies, apparently to spread the appeals among the

But jurisdiction is not an equitable concept. Jurisdiction of a court to hear an appeal should be clearly set forth by the statutes and I believe our statutes do indicate clearly and precisely the courts to which an appeal from an order of the Bureau may be taken.

Heretofore this court has strictly applied the statutes governing appeals from an administrative agency. E.g., *Indianhead Truck Line, Inc. v. Thompson*, 142 N.W.2d 138 (N.D.1966) [an attempted appeal from a decision of the Public Service Commission in which the appellant files with the clerk of the district court his notice of appeal, specifications of error, and undertaking within 30 days after the decision is given, but fails to file proof of service of such notice of appeal and specifications of error within 30 days, as required by Section 28–32–15, N.D.C.C., is fatal, and order of district court dismissing appeal is affirmed].

Section 28–04–07, N.D.C.C., appears to vest the trial court with discretion to change the place of trial. According to the rationale of the majority opinion, the trial court in *Boyko v. N.D. Workmen's Comp. Bureau*, 409 N.W.2d 638 (N.D.1987), could have changed the place of trial to the proper county. It did not. I fear that in the future reliance upon the discretion of the trial court to forward the appeal to the proper county will produce varied results which may be uneven at best and will create uncertainty rather than preciseness in the appeal process.

Jurisdiction to hear appeals is a technical matter and, unless changed by specific legislation, it should remain that way.

■ I agree with Justice Levine that Section 28–04–07, N.D.C.C., does not apply to appeals from the Bureau but I concur in the result because it leaves in effect the judgment of the district court and thereby the decision of the Bureau. That is the same result that would have been achieved if the appeal to the district court had been dismissed for lack of jurisdiction.

GIERKE, J., concurs.

counties in the State rather than concentrating

LEVINE, Justice, dissenting.

I respectfully dissent from the majority's conclusion that NDCC § 28–04–07 conferred jurisdiction on the district court for Williams County to transfer this appeal to the district court for McKenzie County, after the thirty-day time within which to appeal had expired.

Section 28–04–07 is a general venue statute which recognizes the original jurisdiction of district courts, bestowed by the constitution, but limited by venue statutes. Thus, when a case invoking the original trial jurisdiction of a district court is filed in the "wrong" district court, that court is empowered under § 28–04–07 to transfer venue. However, district courts do not have original jurisdiction to hear appeals. *Boyko v. N.D. Workmen's Comp. Bureau*, 409 N.W.2d 638, 641 (N.D.1987). District courts have appellate jurisdiction only as statute may confer. *Boyko, supra.* Even if it were appropriate to construe NDCC § 27–02–05.1 as the majority does, to authorize a district court, rather than the supreme court, to transfer jurisdiction, the statute anticipates a rule to govern such transfer. The majority recognizes there is no such rule extant. Consequently, only a statute addressed to appellate jurisdiction may confer the power to transfer an appeal.

I find no statute which confers on the district court of Williams County, which was without jurisdiction to hear this appeal in the first instance, the jurisdiction to transfer the appeal. Even if there were such a statute, it would have to authorize such transfer beyond the thirty-day time for appeal because that is what happened in this case.

I fear that the majority has improperly blended two very different concepts: jurisdiction and venue. Jurisdiction is the power and authority of a court to act, *Reliable, Inc. v. Stutsman County Commission*, 409 N.W.2d 632 (N.D.1987), while venue is the place where an action may or should be tried. *Stonewood Hotel Corp. v. Davis*

them in Burleigh County.

*Development, Inc.,* 447 N.W.2d 286 (N.D. 1989).

In relying on NDCC § 28–04–07, a general venue statute, the majority overrules *Wagner v. North Dakota Board of Barber Examiners,* 186 N.W.2d 570 (N.D.1971). In *Wagner,* the appellant argued that the statute requiring that an appeal from an administrative decision be taken to a designated district court was not jurisdictional but related to venue only. We rejected that argument, concluding that *general statutes relating to venue have no application to appeals from administrative decisions.* (Emphasis mine.) *Id.* at 573. Instead, appellate jurisdiction to review a decision of an administrative agency "may be had only upon compliance with the conditions imposed by the Legislature." *Id.* We followed *Wagner* in *City of Casselton v. N.D. Public Serv. Com'n,* 307 N.W.2d 849 (N.D.1981); *Happy Day Day Care Ctr. v. Social Service Bd.,* 313 N.W.2d 768 (N.D.1981); *Prosper Energy Corp. v. Indus. Com'n of N.D.,* 359 N.W.2d 860 (N.D. 1984); *Boyko v. North Dakota Workers Comp. Bureau,* 409 N.W.2d 638 (N.D. 1987). We should follow *Wagner* and its progeny in this case. To do otherwise is to inject into our law needless confusion and uncertainty.

I would dismiss the appeal.