Wanda LATRAILLE, Appellant,

v.

NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee.

Civ. No. 910219.

Supreme Court of North Dakota.

Feb. 20, 1992.

Robert Vogel Law Office, P.C., Grand Forks, for appellant; submitted on briefs.

Ken R. Sorenson, Asst. Atty. Gen., Bismarck, for appellee; submitted on briefs.

ERICKSTAD, Chief Justice.

Wanda Latraille appeals from a district court judgment affirming the Workers Compensation Bureau's order denying further benefits. We affirm.

Wanda was employed at the Grafton State School as a resident care technician. In this position Wanda helped groom, dress, and walk clients who were low functioning adults. This job required lifting of some clients into wheelchairs as well as other physical demands. On November 10, 1988, Wanda was involved in an incident where a patient pushed her to the floor and fell on top of her.[1] This patient weighed approximately 170–185 pounds. As a result, Wanda sustained injury to her right side, pulled muscles in her neck, and bruised an ankle. On December 22, 1988, Wanda resigned due to medical concerns.

Thereafter, the Bureau awarded benefits for reasonable medical expenses for treatment of the injuries which occurred on November 10, 1988. The Bureau also ordered that disability benefits be paid from December 20, 1988, through March 30, 1989. The order stated that "absent a significant change in medical condition due to the work injury, additional benefits under the North Dakota Workers Compensation Act beyond those previously paid or those awarded pursuant to the terms of this order, are in all things denied." This order directed that chiropractic treatments were no longer to be paid by the Bureau. Wanda and the State School waived their right

to appeal from this order. However, on January 29, 1990, Wanda reapplied for benefits. The Bureau denied further benefits in an order issued on April 6, 1990.

On April 20, 1990, Wanda requested that the Bureau change her treating doctor from James A. Lessard, M.D., to Phillip J. Bruno, D.C., a chiropractor in Grafton. This request was denied by the Bureau. On May 3, 1990, she petitioned for rehearing of the order of April 6, 1990. After holding a formal telephonic hearing, the Bureau issued an order denying further disability benefits on February 6, 1991. Wanda appealed to the district court which affirmed the Bureau's order. She then appealed to this Court.

Wanda states three issues on appeal:

"I. Whether the Bureau erred in discounting the testimony of Dr. Philip [sic] Bruno, a treating chiropractor.

"II. Whether the claimant's fibrositis resulted from her multiple work injuries.

"III. Whether the claimant remains disabled as a result of her work injuries."

I.

Wanda argues that a reasoning mind could not have determined that Dr. Bruno was less credible than the other treating physicians. She also argues that the Bureau failed to explain the discrepancies in the medical evidence and testimony.

Dr. Bruno had treated Wanda on several occasions between April 20 and May 31, 1990.[2] The Bureau heard testimony only from Dr. Bruno. The Bureau considered the notes and letters of the other doctors and found them to be more credible than Dr. Bruno.[3] Drs. Lessard, Richards, and

1. It is noted that Wanda had sustained prior work injuries for which she had claimed workers compensation; however, the only injury that is in question here is the injury that occurred on November 10, 1988.

2. Wanda testified that she stopped treating with Dr. Bruno because she moved to Wisconsin, not because it was ineffective.

3. The following are the pertinent findings of the Bureau:

"V.

The examination notes of December 22, 1988, by Dr. Robert Richards indicated that there was not any reason why the claimant could [not] return to work if she could modify her work situation. [The word 'not' has been added to be consistent with Dr. Richards' December 22, 1988, examination notes.]

"VI.

According to a letter dated March 20, 1989, written by Dr. James Eckhoff, Dr. Eckhoff indicated claimant has generalized fibrositis, and he expressly stated that he did not assert this arose as a result of her work injuries, but the work injuries had aggravated the fibrositis on multiple occasions.

Eckhoff saw her only a few times; however, the Bureau found them more credible because "they had considerably more extensive experience in treating the claimant." Wanda asserts that the Bureau only relied upon the testimony that was favorable to it, and did not adequately explain why Dr. Bruno's testimony was not credible or worthy of more weight. Wanda asserts that the Bureau's findings must be supported by a preponderance of the evidence. *See* § 28–32–19, N.D.C.C. She argues that the Bureau's findings that Dr. Lessard and Dr. Eckhoff are more credible because they had more extensive experience treating Wanda is unreasonable. We disagree.

On appeal, we review the Bureau's decision, not the decision of the district court. *Holmgren v. Workers Compensation Bureau*, 455 N.W.2d 200, 201 (N.D.1990). Our review is limited by statute. Section 28–32–19, N.D.C.C. We will affirm the Bureau's decision unless the findings of fact are not supported by a preponderance of the evidence, or its conclusions are not supported by the findings. *Howes v. Workers Compensation Bureau*, 429 N.W.2d 730, 734 (N.D.1988). It is important to keep in mind that, "[i]n determining whether or not an agency's findings of fact are supported by a preponderance of the evidence we do not make independent findings of fact or substitute our judgment for that of the agency, but we determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence." *Howes*, 429 N.W.2d at 734 (citing *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979)).

In *Kopp v. Workers Compensation Bureau*, 462 N.W.2d 132 (N.D.1990), we addressed issues similar to those presented in this case. *Kopp* involved a claimant who was awarded medical and disability benefits by the Bureau for a work-related injury. *Id.* at 133. The Bureau continued benefits until it determined that Kopp was no

"VII.
Dr. Robert Richards, by letter dated March 22, 1989, indicated that the claimant's problems relate both directly and indirectly to claimant's work injuries.
"VIII.
The North Dakota Workers Compensation Bureau accepted liability for the November 10, 1988, injury and awarded medical benefits and disability benefits by order of May 3, 1989. The order specifically denied payment of chiropractic treatments for the claimant's fibrositis condition. The claimant and the employer filed written waives [sic] of their right to appeal, and the order became final.
"IX.
Dr. James Eckhoff indicated on March 30, 1989, that the claimant could return to her previous employment.
"X.
The claimant filed a reapplication for benefits on January 25, 1990, in connection with her November 10, 1988, injury. The claimant stated that Dr. Lessard had advised her to discontinue working, due to increased symptoms in her arms, hands, shoulder and back areas.
"XI.
The records of Dr. Lessard do not indicate that he had advised the claimant to cease employment.
"XII.
According to the expert medical opinion of several doctors, including Dr. Lessard, Dr.

Eckhoff, and Dr. Richards, the claimant suffers from fibrositis.
"XIII.
According to the claimant's medical records, Dr. James A. Lessard, M.D. a rheumatologist, indicated on January 4, 1990, that the claimant could safely return to her work as a dishwasher.
"XIV.
Dr. James Eckhoff, M.D., a rheumatologist, does not consider fibrositis to be a disabling condition and he stated that the claimant understood this.
"XV.
Dr. James Eckhoff also told the claimant that fibrositis could not be treated with chiropractic care.
"XVI.
Dr. Phillip Bruno, a chiropractor, treated the claimant in April and May of 1990, and expressed his opinion that the claimant was disabled as a result of the November 10, 1988, injury. Dr. Bruno's determination is not as credible as that of Dr. Lessard and Dr. Eckhoff, as they had considerably more extensive experience in treating the claimant.
"XVII.
The greater weight of the evidence indicates that the claimant is not disabled as a result of her November 10, 1988, injury and there is no evidence to indicate any reason to disagree with the Bureau's order to cease chiropractic treatment payments."

longer disabled. *Id.* A formal hearing was held after which the Bureau issued an order denying Kopp benefits. *Id.* On appeal to the district court, the Bureau was ordered to reconsider the case in light of other evidence. *Id.* After such review, the Bureau issued an order which, in essence, again denied further benefits. *Id.* On appeal to the district court, that court determined that the claimant was entitled to recover disability benefits for a specified time, but affirmed the decision of the Bureau to terminate the claimant's benefits after the time specified. *Id.*

On appeal to this Court, Kopp asserted that the Bureau's findings were not supported by a preponderance of the evidence because it placed the burden upon Kopp to show that he remained disabled, and that the Bureau failed to resolve the inconsistencies in the medical evidence. *Id.* In response to Kopp's argument that it was not his burden to prove that he remained disabled, this Court said:

> "As we have previously indicated herein, where the Bureau decides to terminate benefits after initially granting compensation, the burden will be upon the claimant to establish that he or she has a continuing right to receive the benefits. *Hayden v. Workers Compensation Bureau,* 447 N.W.2d [489] at 496; *Gramling v. North Dakota Workmen's Comp. Bureau,* 303 N.W.2d 323 (N.D.1981)."

*Kopp v. Workers Compensation Bureau,* 462 N.W.2d at 135.

■ We acknowledge that Justice Meschke dissented in *Kopp* on the issue of the burden of proof, but we adhere to our view that the claimant continues to have the burden of proving his or her right to participate in the fund even after the Bureau has paid benefits. *See Hayden v. Workers Compensation Bureau,* 447 N.W.2d 489, 496 (N.D.1989); § 65–01–11, N.D.C.C.

■ Also in *Kopp* we discussed our position on conflicting medical evidence in workers' compensation cases.

> "Although the ultimate resolution of conflicting medical testimony falls with the agency, this Court has required the

Bureau to clarify discrepancies among inconsistent medical reports. *DeChandt v. N.D. Workers Comp. Bureau,* 452 N.W.2d 82, 83 (N.D.1990); *Howes v. Workers Compensation Bureau,* 429 N.W.2d 730, 733 (N.D.1988); (quoting *Hayes v. North Dakota Workers Comp. Bureau,* 425 N.W.2d 356, 357 (N.D. 1988)). Initially, we limited the requirement of adequate clarification of discrepancies in medical testimony to situations involving internal conflicts in the attending physician's report. *[Claim of] Bromley,* 304 N.W.2d [412] at 417. Later, we expanded the requirement to include situations involving two reports by the same physician which contained conflicting opinions. *Roberts v. North Dakota Workmen's Compensation Bureau,* 326 N.W.2d 702, 706 (N.D.1982). Finally, in 1985, this Court remanded a decision to clarify discrepancies between two different physicians. *Weber v. North Dakota Workmen's Compensation Bureau,* 377 N.W.2d 571, 574 (N.D. 1985). Although we are continuing to shape the principles which govern the Bureau's treatment of inconsistent medical evidence, we must continually bear in mind the basic rule first articulated by Justice Sand: 'Normally, it is within the province of the administrative agency, not the courts, to weigh conflicting medical opinions and to resolve these conflicts.' *Bromley,* 304 N.W.2d at 417 (citing *Hassler v. Weinberger,* 502 F.2d 172 (7th Cir.1974))."

*Kopp,* 462 N.W.2d at 135. The Bureau has the authority to decide conflicting medical evidence. That decision will be upheld unless it is not supported by a preponderance of the evidence.

■ In this case, the Bureau found: "Dr. Bruno's determination [was] not as credible as that of Dr. Lessard and Dr. Eckhoff, as they had considerably more extensive experience in treating the claimant." The Bureau did not explain in detail why Dr. Bruno's testimony was not as credible. We bear in mind that Dr. Eckhoff and Dr. Lessard are rheumatologists, and that Dr. Bruno is a chiropractor.

The facts indicate that Dr. Bruno did not see Wanda until April of 1990, some 17 months after the November 10, 1988, injury, while the other physicians treated Wanda following the incident in 1988 and early 1989.

We recognize that it is within the Bureau's province to weigh the credibility of the evidence presented. *Hayden v. Workers Compensation Bureau*, 447 N.W.2d at 498. The Bureau is also responsible for weighing any conflicts in medical opinions, and for resolving those conflicts. *Bromley v. Workmen's Compensation Bureau*, 304 N.W.2d 412, 417 (N.D.1981); *see Howes v. Workers Compensation Bureau*, 429 N.W.2d at 734.

The Bureau had all of the medical records and reports before it in determining this claim. Dr. Bruno presented live testimony regarding his treatment of Wanda. However, as recited, he did not begin treating her until April of 1990, a year and a half after the injury.

The record indicates that Dr. Robert Richards examined Wanda on December 21, 1988. In his office notes, he indicates that he "would have no reason to keep her from working if she can modify her work situation." On January 5, 1989, Wanda was seen by Dr. James Eckhoff. At that time, Dr. Eckhoff advised Wanda to not work for the next month. Dr. Eckhoff's impression from his March 30, 1989, examination was "[g]eneralized fibrositis aggravated by previous work injuries and great reluctance on the part of the patient to return to her previous work place because of fear of similar work injuries." In his treatment plan for Wanda, Dr. Eckhoff believed that she could return to the work that she had done, but she said that she would not due to personal choice. He indicated that he did not consider fibrositis a disabling condition, and Wanda understood his position.

When Wanda was again seen by Dr. Eckhoff on May 25, 1989, he indicated that she could return to some light to medium work. It was Dr. Eckhoff's opinion, at this time, that her cervical and lumbar sprain/strain was "completely healed and she [was] back to baseline."

Wanda was treated by Dr. James Lessard, a rheumatologist, on January 3, 1990. She had been in Oregon and had experienced a recurrence of fibrositis symptoms. In his office note of January 4, 1990, Dr. Lessard wrote that it would be safe for Wanda to return to her job as a dishwasher; however, she was informed that if she noticed a worsening of her symptoms, she was to call. Her pain did increase and Dr. Lessard ordered wrist splints to be worn at night. On January 23, 1990, Dr. Lessard noted that, after an EMG, Wanda did not suffer from carpal tunnel syndrome and that fibrositis syndrome was causing most of her symptoms.

These physicians treated Wanda much closer to the time of the injury. In fact, Dr. Richards and Dr. Eckhoff saw Wanda within two months of the injury. Under these circumstances, we conclude that the Bureau's finding that they were more credible than Dr. Bruno is supported by the preponderance of the evidence.

## II.

■ The next issue raised is whether or not the fibrositis is a result of Wanda's work-related injuries. There was conflicting evidence before the Bureau on this point.

In Dr. Eckhoff's examination notes of January 5, 1989, March 30, 1989, and May 25, 1989, he consistently indicated that Wanda suffered from generalized fibrositis which was aggravated by previous work experience and injuries.[4]

Dr. Bruno testified that "more than likely repeated injuries would predispose a person to [fibrositis]." It was his opinion that Wanda's condition was related to her work injuries.

The Bureau had the opportunity to evaluate this evidence and make a determination. It is for the Bureau to weigh conflicting medical evidence and resolve conflicts.

4. We recognize that section 65–05–15, N.D.C.C., covers aggravation awards. However, Wanda did not request an award on an aggravation basis.

*Howes v. Workers Compensation Bureau,* 429 N.W.2d 730, 734 (N.D.1988). We recognize that "it is not within the function of this Court to engage in independent fact finding or substitute our judgment for that of the agency. Our function is to determine whether or not a reasoning mind could have reasonably determined that the factual conclusions were supported by the evidence." *Kopp v. Workers Compensation Bureau,* 462 N.W.2d at 135–36 (citations omitted).

We cannot say that the finding that fibrositis was only aggravated by Wanda's work injuries is not supported by a preponderance of the evidence, given Dr. Eckhoff's specialty and early treatment of Wanda.

### III.

The final issue on appeal is whether or not the claimant remains disabled due to her work injuries.

In Dr. Eckhoff's office notes of March 30, 1989, he indicated that Wanda could return to work and that he so informed her, but she said that she would not return to work because of her personal choice. His notes also disclose that he informed Wanda that he did not consider fibrositis a disabling condition, and that Wanda could return to some light to medium work after her May 25, 1989, examination.

In an order dated May 3, 1989, the Bureau determined that Wanda was entitled to disability benefits from December 20, 1988, through March 30, 1989. The Bureau also determined that it would no longer pay for any chiropractic benefits. The Bureau found that she was no longer disabled due to her November 1988 work injury.

A claimant must prove that he or she is entitled to participate in the fund. Section 65–01–10, N.D.C.C. It is the responsibility of a claimant, once the Bureau has discontinued benefits, to show that the claimant now requires benefits. *Kopp v. Workers Compensation Bureau,* 462 N.W.2d at 135. Dr. Eckhoff believed Wanda could return to work as early as March 30, 1989; however, she did not do so be-

cause of her personal choice. Here, Wanda failed to adequately prove by a preponderance of the evidence that any disability she was experiencing was related to her November 1988 work injury.

Therefore, because of the reasons set forth above, we affirm.

ERICKSTAD, C.J., VANDE WALLE and LEVINE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

MESCHKE, J., concurs in the result.

VERNON R. PEDERSON, Surrogate Judge, sitting with the Court due to the resignation of the Honorable H.F. GIERKE III, as of November 20, 1991.